**Donna Lewis and Gordon Lewis v. Steven Cohen and Jennifer Cohen, et al.**

[603 A.2d 352]

No. 89-612

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed December 13, 1991

*Harry A. Black* of *Black, Black & Davis*, White River Junction, for Plaintiffs-Appellants.

*Alan B. George* and *Timothy Martin* of Carroll, George & Pratt, Rutland, for Defendants-Appellees.

**Dooley, J.** Plaintiffs purchased a video retail company from defendants in the spring of 1985 for $250,000. When plaintiffs found that the business had more debts outstanding than they believed defendants had represented, they sued, claiming breach of the sales contract and misrepresentation. Plaintiffs appeal from a superior court judgment for defendants. We affirm in part and reverse in part.

Prior to the sale, defendants' accountants had prepared a "statement of operations" for the business for the year ending December 31, 1984. In the purchase and sale agreement, defendants portrayed that statement as "true and complete and fairly and accurately" representative of the condition of the business. In addition, defendants represented that the operation of the business for the year ended April 1, 1985 was "con-

sistent with or better than the statement of operations for the year ended December 31, 1984." Based on figures in the accountant's statement, plaintiffs calculated the profitability and value of the business.

Soon after closing, debts incurred by the business prior to the sale and not listed in the statement of operations began to surface. At trial, plaintiffs alleged that the presence of those debts reduced the value of the business and contradicted defendants' representations in the purchase and sale contract. Sitting without a jury, the court held for defendants. It found that plaintiffs had not shown by clear and convincing evidence that the statement of operations, in the context in which it was presented to plaintiffs, was inaccurate, and that to the extent it was misleading, plaintiffs had not shown by clear and convincing evidence that defendants' actions constituted fraud.

The court also found that plaintiffs received the items they bargained for, including equipment, leasehold improvements, furniture and fixtures, a covenant not to compete, customer lists, and good will. It determined that plaintiffs knew of defendants' "checkered financial history" and had been informed by defendants in a general way that there were debts against the business other than those listed on the statement of operations. If plaintiffs overpaid for the business, the court found, it was the result of their own failure to investigate defendants' representations relevant to the value of the business. Further, the court found that defendants had not, as alleged by plaintiffs, acted fraudulently to prevent plaintiffs from undertaking such an investigation. In its conclusions of law, the court did not explicitly resolve plaintiffs' claim that defendants breached the contract of sale.

On appeal, plaintiffs claim that the court erred in its findings of fact and conclusions of law regarding their fraud claim, and erred in finding for defendants without explicitly disposing of plaintiffs' breach of contract claim or making findings that could resolve that claim by the proper standard of proof.

We look first at the fraud claim. Plaintiffs claim that the trial court erred by finding certain facts, and by improperly holding plaintiffs to a duty to investigate the representations made to them by defendants about the financial condition of the business.

■ We will not disturb findings of fact unless clearly erroneous or unsupported by the evidence. *Semprebon v. Semprebon*, 157 Vt. 209, 214, 596 A.2d 361, 363 (1991). For each of plaintiffs' claims of errant findings, we find evidence in the record to support the facts found by the court.[1]

■ In analyzing plaintiffs' argument on the duty to investigate, we start with the elements of fraudulent inducement to contract, stated recently as follows:

> "An action for fraud and deceit will lie upon an intentional misrepresentation of existing fact, affecting the essence of the transaction, so long as the misrepresentation was false when made and known to be false by the maker, was not open to the defrauded party's knowledge, and was relied on by the defrauded party to his damage."

*Silva v. Stevens*, 156 Vt. 94, 102, 589 A.2d 852, 857 (1991) (quoting *Union Bank v. Jones*, 138 Vt. 115, 121, 411 A.2d 1338, 1342 (1980)). Each element must be proven by the standard of clear and convincing evidence. *In re Estate of Raedel*, 152 Vt. 478, 485, 568 A.2d 331, 334 (1989).

The short answer to plaintiffs' claim is that the trial court determined that they failed to prove two elements of fraud, and they are attacking the conclusion with respect to only one element on appeal. Thus, the trial court found that plaintiffs failed to show by the requisite evidentiary standard that defendants intentionally misrepresented material facts. Although the court found that defendants' statement of operations understated the 1984 debts and costs of doing business, the court concluded that plaintiffs were generally informed about debts for the business not included on the statement. Since defendants made no actionable misrepresentations, it makes no difference whether plaintiffs had a duty to investigate defendants' representation.

■ Even considering plaintiffs' argument, we find no error. The court found that, even if misrepresentations were

---

[1] Plaintiffs claimed that the court contradicted its finding that the unpaid debts were detailed with a finding that the debts were undisclosed. This claim is without merit, since one finding addressed disclosures made during negotiation of the purchase and sales contract, and the other addressed disclosures made at the closing.

made, plaintiffs did not justifiably rely on them. In claiming the court thereby improperly placed upon them a burden to investigate defendants' purported misrepresentations, plaintiffs rely on the general rule that one who has intentionally misrepresented facts to induce another to enter into a contract may not defend by saying that "'plaintiff might, but for his own neglect, have discovered the wrong.'" *Sutfin v. Southworth*, 149 Vt. 67, 70, 539 A.2d 986, 988 (1987) (quoting *Viens v. Lanctot*, 120 Vt. 443, 450, 144 A.2d 711, 716 (1958)). Where, however, "'it is clear from the full text of a representation or from facts about the relationship of the parties that reliance should only follow an independent inquiry,'" then plaintiffs will be held to such an investigation. *Silva*, 156 Vt. at 105, 589 A.2d at 858 (quoting *Winton v. Johnson & Dix Fuel Corp.*, 147 Vt. 236, 241, 515 A.2d 371, 374 (1986)). A central element of a fraud claim is that a misrepresentation be made as to a material fact, knowledge of which would be "otherwise . . . unavailable to the purchasers in the exercise of their due diligence." *Cheever v. Albro*, 138 Vt. 566, 572, 421 A.2d 1287, 1290 (1980).

The trial court found, based on the nature of the representation and the relationship of the parties, that reliance in this case was justified only if it followed an independent inquiry. The evidence supports that finding. The statement of operations utilized a method of accounting that made it plain that it did not contain all liabilities of the business for the year 1984. Defendants told plaintiffs that there were outstanding debts against the business in general, and plaintiffs knew that defendants had a "checkered financial history."[2] Plaintiffs could have required that the parties comply with the bulk sales provisions of the Uniform Commercial Code, 9A V.S.A. §§ 6—102–6—111, which would have protected plaintiffs against defendants' creditors. Plaintiffs eschewed such protection and instead gave defendants a note allowing them to set off against payments for the business the amount of any preexisting debts paid by plaintiffs.

---

[2] Plaintiffs also assert that the statement in the court's conclusions of law that plaintiffs knew of defendants' "checkered financial history" was inconsistent with the findings. We disagree. Although one part of one sentence in the lengthy findings can be read as inconsistent, the findings overall reflect that plaintiffs were aware of the potential for problems in dealing with these defendants and even took some steps to protect themselves.

Presumably, and so the court found, this was done for the very reason that plaintiffs were not entirely confident that defendants had made full disclosure of their outstanding debt. Plaintiffs concede that investigation on their part could have discovered the inaccuracies in defendants' representations. The court did not err in concluding that plaintiffs' reliance on the representations for computing the value of the business was unjustified. Unlike in *Sutfin*, 149 Vt. at 71, 539 A.2d at 988, where there was "no reason to inspect," the court here found a number of factors, known to plaintiffs, that should have caused them to investigate the veracity of defendants' representations.

Plaintiffs argue further that defendants prevented them from undertaking an investigation which would have informed them about the true value of the business. Although defendants accelerated the closing because of their need for the proceeds, we uphold the trial court's conclusion that this action, to which the plaintiffs agreed, did not prevent an investigation into the financial affairs of the business. This case differs from that in *White v. Pepin*, 151 Vt. 413, 420, 561 A.2d 94, 98 (1989), where we found that the purchaser of a business was prevented from learning the true facts about the business in part because the seller pressed for an offer "almost immediately." Here, plaintiffs controlled the timing of the purchase and sale contract and over two weeks expired between the signing of the contract and closing.

The second issue before us is whether the trial court erred in failing to dispose of plaintiffs' claim for breach of contract. The claim arose from the same facts as the fraud claim and provided an alternative theory of liability. Specifically, plaintiffs alleged at trial that statements in the purchase and sales contract, including those with respect to the veracity and meaning of the figures contained in the statement of operations, turned out to be false and constituted a breach of the contract.

The parties do not dispute that the court failed to directly address this claim. The court did conclude in resolving the fraud claim that the accountant's statement was not inaccurate because it did not purport to show whether bills were actually paid. Presumably, this same conclusion applied to the representation that operations were consistent with the accountant's statement for the year ending April 1, 1985. The court did not

specifically address a contractual provision representing that there were no claims against the business except for certain listed items. The court did conclude, however, that plaintiffs failed to prove that "[d]efendant wrongfully made any false statement of material fact." On appeal, plaintiffs argue that the court's conclusions did not resolve the breach of contract claim because the court stated that plaintiffs failed to prove certain elements by the standard of clear and convincing evidence, which does not apply to contract claims. We agree.

To prevail in their fraud claim, plaintiffs had to prove the elements by clear and convincing evidence. See *In re Estate of Raedel*, 152 Vt. at 485, 568 A.2d at 334. This higher standard of proof, however, is not applicable in civil cases generally. *Poulin v. Ford Motor Co.*, 147 Vt. 120, 125–26, 513 A.2d 1168, 1172 (1986). To establish breach of contract or breach of warranty, then, plaintiffs had to establish their case only by a preponderance of the evidence. Even assuming that the court's findings and conclusions demonstrated that plaintiffs could not prevail on the contract claim, they cannot decide the claim based on the wrong standard of proof. A court could conclude that a determinative fact not shown by clear and convincing evidence had been shown by a preponderance of the evidence. That possibility is real in this case because the court clearly stated that plaintiffs failed to establish critical facts by clear and convincing evidence.

Defendants present two reasons why we should not reverse on the contract claim. First, they contend that by bringing this case as a suit for fraudulent misrepresentation inducing a contract, plaintiffs elected not to bring a claim for breach of that contract. Plaintiffs, however, were entitled to pursue inconsistent claims in one case. V.R.C.P. 8(e)(2); see also *Anello v. Vinci*, 142 Vt. 583, 586, 458 A.2d 1117, 1119 (1983). Even inconsistent remedies can be pursued in the alternative, a right not undercut by the fact that one who proves fraud must decide whether to rescind the underlying contract or to affirm it and claim damages. See, e.g., *Collins v. Estate of Collins*, 104 Vt. 506, 513, 162 A. 361, 363 (1932); *Poor v. Woodburn*, 25 Vt. 234, 241 (1853). Here, there is no inconsistency of remedy. The theory involved may affect the amount of damages, but plaintiffs pursued the same basic remedy under both theories.

█ Defendants' second argument is that the breach of contract claim should not be considered because it was not plaintiffs' theory at trial, was not addressed in plaintiffs' proposed findings, and was not brought to the court's attention by post-judgment motion. We find, however, that the issue is preserved as plaintiffs fairly presented the issue below. Plaintiffs not only pleaded a claim for breach of contract, they included the claim in their brief to the trial court as well. See *University of Vermont v. Town of Mendon*, 136 Vt. 400, 402, 392 A.2d 415, 417 (1978) (legal theory presented to trial court in memorandum prior to court's decision could be considered on appeal although not tried or decided on that theory by trial court).[3] Much of the evidence presented at trial related to the contract, both its making and performance, and could have formed the basis of findings of fact and conclusions of law resolving the contract claim.

█ Neither party moved the trial court, pursuant to V.R.C.P. 52(b) (amendment of findings) or 59(a) or (e) (new trial or amendment of judgment), to address its failure to resolve the contract claim. While such motions are not prerequisites to appellate review, see, e.g., *Osborn v. Osborn*, 147 Vt. 432, 433, 519 A.2d 1161, 1162 (1986), they are helpful in avoiding the delay and cost of an unnecessary appeal. It would have been far preferable to correct an obvious oversight in the trial court rather than through the appellate process.

██ Where a trial court has failed to resolve a claim made to it, the proper remedy is for us to remand. See *Martin v. Blanchard*, 149 Vt. 658, 658, 541 A.2d 1199, 1199 (1988). We do not preclude the possibility, however, that the error here can be corrected without new evidence by the same court as an amendment to the findings pursuant to V.R.C.P. 52(b), followed, if necessary, by an amendment to the judgment.

·

---

[3] Ironically, defendants addressed the breach of contract claim in their request for findings, showing that they thought this theory remained in issue at trial. Defendants then argued that the claim could be disposed of by a finding that the terms and representations in the purchase and sale contract were not intended to survive the closing. They have not raised this theory here.

Affirmed as to plaintiffs' claim of fraud; remanded for determination of plaintiffs' claim of breach of the purchase and sale contract.

*Affirmed as to plaintiffs' claim of fraud; remanded for determination of plaintiffs' claim of breach of the purchase and sale contract.*