## Vermont State Employees' Association, Inc., et al. v. Vermont Criminal Justice Training Council

[704 A.2d 769]

No. 96-576

Present: Gibson, Dooley, Morse and Johnson, JJ., and Allen, C.J. (Ret.), Specially Assigned

Opinion Filed October 24, 1997

*Samuel C. Palmisano*, VSEA Legal Counsel, and *Mark Heyman*, Assistant Legal Counsel, Montpelier, for Plaintiffs-Appellants.

*Jeffrey L. Amestoy*, Attorney General, and *David K. Herlihy*, Assistant Attorney General, Montpelier, for Defendant-Appellee.

**Gibson, J.** The Vermont State Employees' Association, Inc. (VSEA) and five former state employees appeal the superior court's dismissal of their suit claiming that the Vermont Criminal Justice Training Council violated the state classification plan and its merits system principles by laying off the five employees and contracting out their work to a private company. Because we conclude that plaintiffs have failed to show that the Attorney General clearly abused his discretion in approving the contract privatizing the work previously done by the employees, we affirm the superior court's dismissal of the suit.

The Council operates the Vermont Police Academy, providing basic and advanced training to law enforcement officers and firefighters. Until July 1993, it ran a food service staffed by civil servants employed under the State Employees Labor Relations Act and the collective bargaining agreement in effect at the time. In the fall of 1992, the Council submitted its proposed budget for fiscal year 1994 to the Department of Finance and Management, which works with state agencies in preparing the Governor's proposed budget for each fiscal year. The Department questioned why the Council had a full-time cafeteria staff to service a part-time training facility. Based on the Department's estimate of the savings that would be realized by privatizing the food service at the Academy, the Governor proposed that the Council's budget for fiscal year 1994 be reduced by $73,000. The Legislature approved the budget, and the five food service workers were laid off. The Council contracted with a private company to provide meals at the Academy beginning July 1, 1993. On August 4, 1993, the Attorney General certified that the food-service contract was not contrary to the spirit and intent of the classification plan and its merit system principles.

Plaintiffs filed two separate actions challenging the layoffs and ensuing contract. In September 1994, they filed a grievance with the Vermont Labor Relations Board, alleging that the State had violated the collective bargaining agreement by failing to demonstrate that the contracting out of their work met the contractual criteria required for such action, and by failing to give the VSEA a meaningful opportunity to discuss cost-saving alternatives to the layoffs before taking the action. In October 1994, in a 2-1 decision, the Board dismissed plaintiffs' grievance, and this Court affirmed the Board's action in September 1995. See *In re VSEA*, 164 Vt. 214, 666 A.2d 1182 (1995).

In the other action, brought in August 1993, plaintiffs filed a complaint under V.R.C.P. 75 in superior court, requesting that the court declare the employees' layoffs to be in violation of state law and order the Council to restore the employees to their former positions. The State filed a counterclaim asking the court to declare that state law and the collective bargaining agreement entitle it, for economic reasons alone, to lay off state employees and contract out their work to private employers. In September 1996, the superior court dismissed both plaintiffs' complaint and the State's counterclaim. The court found no basis for review of the Attorney General's certification of the contract privatizing plaintiffs' work, and concluded, in any case,

that plaintiffs had failed to show an abuse of discretion. The court also concluded that state law did not require express legislative authorization before state employees could be laid off and their work contracted out to private employers. On appeal, plaintiffs argue that (1) the superior court had jurisdiction to adjudicate their complaint, and (2) the Attorney General abused his discretion in certifying the contract at issue.

## I.

The first issue concerns the source and scope of the superior court's jurisdiction to review the Attorney General's certification of contracts between state agencies and private persons. The Attorney General may certify to the Governor that such a contract is not contrary to the spirit and intent of the classification plan and merit system principles, in which case state laws concerning classified service do not apply to any positions resulting from the contract. 3 V.S.A. § 311(a)(10). There is no statutory provision for review of the Attorney General's decision whether to certify such contracts. Plaintiffs sought review of the Attorney General's decision in this case under V.R.C.P. 75(a). On appeal, they argue that the superior court has jurisdiction to review the Attorney General's certification under both Rule 75 and the Declaratory Judgment Act, 12 V.S.A. § 4711.

The Declaratory Judgment Act allows parties who have a dispute within a court's jurisdiction to petition that court for declaratory relief at an early stage of the proceedings; however, the Act does not increase or enlarge the jurisdiction of the court over any subject matter or parties. *Gifford Memorial Hosp. v. Town of Randolph*, 119 Vt. 66, 70, 118 A.2d 480, 483 (1955); accord *McGlynn v. Town of Woodbury*, 148 Vt. 340, 343, 533 A.2d 1187, 1189 (1987); *Trivento v. Commissioner of Corrections*, 135 Vt. 475, 478, 380 A.2d 69, 72 (1977).[1] Accordingly, we must look to Rule 75 to determine

---

[1] Plaintiffs' attempt to distinguish these cases is unavailing. Nor does *Neal v. Brockway*, 136 Vt. 119, 385 A.2d 1069 (1978), support their contention that the Declaratory Judgment Act provides jurisdiction for their claims. In that case, the plaintiffs did not allege sufficient money damages to invoke the jurisdiction of the superior court. This Court held, however, that the plaintiffs' request for declaratory relief invoked the court's jurisdiction and thus overcame their failure to allege the jurisdictional amount of damages. *Id.* at 121, 385 A.2d at 1070. Unlike the instant case, there was no question that the subject matter of the parties' dispute — common-law claims regarding the establishment and distribution of jointly held accounts — was within the superior court's jurisdiction.

whether the superior court has jurisdiction to review the Attorney General's certification decisions. Cf. *Molesworth v. University of Vermont*, 147 Vt. 4, 6-7, 508 A.2d 722, 723 (1986) (superior court review of university's in-state tuition eligibility determinations was available under Rule 75; Declaratory Judgment Act did not increase or enlarge superior court's jurisdiction).

Rule 75(a) provides that any action by a state agency "that is not appealable under Rule 74[2] may be reviewed in accordance with this rule if such review is otherwise available by law." When, as here, legislation is silent on whether review is available, we have permitted appeal under Rule 75 so long as review would have been available under any one of the extraordinary writs, such as mandamus, scire facias, prohibition, quo warranto, and certiorari. *Hunt v. Village of Bristol*, 159 Vt. 439, 440, 620 A.2d 1266, 1266 (1992). Plaintiffs concede that the only possibility in this case is mandamus. Generally, the purpose of mandamus is to require a public officer to perform a simple and definite ministerial duty imposed by law. *Eastern Advertising, Inc. v. Cooley*, 126 Vt. 221, 222, 227 A.2d 294, 295 (1967); *Rutland Cable T.V., Inc. v. City of Rutland*, 121 Vt. 399, 403, 159 A.2d 83, 85 (1960). Thus, mandamus ordinarily is not available to compel discretionary decisions. See *State v. Forte*, 159 Vt. 550, 555, 624 A.2d 352, 356 (1993). The writ has been extended, however, to reach extreme abuses of discretion involving refusals to act or perform duties imposed by law. *Id.* at 555-56, 624 A.2d at 356; accord *Bargman v. Brewer*, 142 Vt. 367, 370, 454 A.2d 1253, 1255 (1983).

Here, notwithstanding plaintiffs' protestations to the contrary, the Attorney General's certification decision is plainly discretionary in nature. Indeed, it is difficult to imagine a more discretionary act than determining whether, considering all relevant facts and circumstances, a particular contract violates "the spirit and intent" of a detailed statute such as the state classification law, 3 V.S.A. § 311(a)(10). Given the above analysis, we conclude that the superior court had jurisdiction to review the Attorney General's certification decision under only a very limited standard of review to determine whether there had been a clear and arbitrary abuse of authority.

---

[2] V.R.C.P. 74 applies "whenever any party is entitled by statute to seek review of, or appeal from, the decision in a proceeding determined by any state board, commission, department or officer other than the legislature or courts." *Id.* 74(a). In short, Rule 74 applies when review is provided by statute. *Hunt v. Village of Bristol*, 159 Vt. 439, 439, 620 A.2d 1266, 1266 (1992).

## II.

We now address whether the Attorney General clearly abused his discretion in certifying that the food-service contract did not violate the spirit and intent of the classification plan and merit system principles.

Under 3 V.S.A. § 311(a)(10), the classified service

shall include all positions and categories of employment by the state, except as otherwise provided by law, and except the following:

. . . .

(10) A person or persons engaged under . . . contract, . . . when certified to the governor by the attorney general that such engagement is not contrary to the spirit and intent of the classification plan and merit system principles and standards provided by this chapter.

The term "merit system" is defined as

the system developed to maintain an efficient career service in state government under public rules, which, among other provisions, includes appointment through competitive examination; nondiscrimination because of race, sex, politics, national origin, or religion; an equitable and adequate compensation plan; tenure, contingent on successful performance; and promotion, contingent on evaluated capacity and service.

3 V.S.A. § 312(a).

"Merit system principles" include

(1) Recruiting, selecting, and advancing employees on the basis of their relative ability, knowledge, and skills, including open consideration of qualified applicants for initial appointment;

(2) [Repealed.]

(3) Training employees, as needed, to assure high-quality performance;

(4) Retaining employees on the basis of the adequacy of their performance, correcting inadequate performance, and

separating employees whose inadequate performance cannot be corrected;

(5) Assuring fair treatment of applicants and employees in all aspects of personnel administration without regard to political affiliation, race, color, national origin, sex, or religious creed and with proper regard for their privacy and constitutional rights as citizens; and

(6) Assuring that employees are protected against coercion for partisan political purposes and are prohibited from using their official position for the purpose of interfering with or affecting the result of an election or a nomination for office.

3 V.S.A. § 312(b).

Before approving the food-service contract, the Assistant Attorney General assigned to review the contract spoke with the Director of the Training Council, the Department of Finance and Management budget analyst who examined the Council's budget, and the General Counsel for the Department of Personnel. He also reviewed the proposed food-service contract, the collective bargaining agreement, the Agency of Administration's Bulletin on personal service contracts (Bulletin 3.5), the budget analyst's financial calculations, the Council's proposed budget for fiscal year 1994, and various other documents and letters. Based upon information gathered in these interviews and documents, the Assistant Attorney General certified that the food-service contract did not violate the "spirit and intent" of the classification plan and merit system principles.

In rejecting plaintiffs' argument that the contract violated merit system principles, the superior court noted that (1) the contract complied with Bulletin 3.5 and would realize more than a ten percent cost savings for the Council; (2) the private contractor was selected through a formal bidding process; (3) the Legislature was aware of the privatization of the food-service employees' jobs, and endorsed it in the legislative budgeting process; and (4) the contract was consistent with the collective bargaining agreement, which permitted layoffs in situations where work could be performed more economically under an outside contract.

Plaintiffs acknowledge that privatizing their jobs may save money and thus improve the efficiency of state service. They also concede that the food-service contract would not impede the merit system goal

of preventing a "spoils" system based on political favors rather than merit. They contend, however, that neither the Attorney General nor the superior court considered the full scope of the merit system principles, including selecting employees based on their skills following competitive examination and retaining employees based on the adequacy of their performance.

■ We find no clear abuse of discretion in the Attorney General's decision to certify the food-service contract. The historical and fundamental purpose of the civil service and its merit system principles is to insulate the state work force from political influence so as to improve the effectiveness and efficiency of state government. See *Moore v. Department of Transp.*, 875 P.2d 765, 769, 772 (Alaska 1994) (goal of establishing stable body of civil service workers is secondary to merit principle's primary objective of protecting state workers against spoils system); *California State Employees' Ass'n v. State*, 245 Cal. Rptr. 232, 235 (Ct. App. 1988); *Carter v. Department of Health*, 504 N.E.2d 1108, 1109 (Ohio 1986); *Michigan State Employees Ass'n v. Civil Service Comm'n*, 367 N.W.2d 850, 852 (Mich. Ct. App. 1985). Each of § 312's enumerated merit system principles is aimed at furthering this fundamental purpose. As plaintiffs themselves acknowledge, the food-service contract is not inconsistent with this goal, particularly considering that the contract was subject to formal competitive bidding. See Note, *Civil Service Restrictions on Contracting Out by State Agencies*, 55 Wash. L. Rev. 419, 424 (1980) (empirical evidence strongly suggests that competitive bidding is more effective than merit system in insulating Washington state government from improper influences). Nor is the contract inconsistent with merit principles aimed at ensuring an open and independent state work force. Therefore, we can hardly conclude that the Attorney General clearly abused his discretion by certifying the contract.

■ ■ Plaintiffs argue, however, that cost savings is not an appropriate factor to consider in determining whether a contract is consistent with the spirit and intent of the classification plan and merit system principles because the classification statute does not specifically list cost savings as a factor to consider. We disagree. One of the stated purposes of the merit system is "to maintain an *efficient* career service in state government." 3 V.S.A. § 312(a) (emphasis added). In any event, plaintiffs miss the point. Under § 311(a)(10), the Attorney General determines whether a contract is *contrary* to the

merit system, not whether it furthers the system.[3] As other courts have recognized, government agencies operating under the merit system "have traditionally been accorded broad latitude to eliminate jobs for economic, as opposed to political reasons." *Moore*, 875 P.2d at 769; see, e.g., *Connecticut State Employees Ass'n v. University of Connecticut*, 345 A.2d 36, 40 (Conn. 1974); *Moncrief v. Tate*, 593 S.W.2d 312, 313 (Tex. 1980).

Plaintiffs also argue that the Attorney General and superior court unjustifiably relied on Bulletin 3.5 and the collective bargaining agreement in approving the food-service contract. According to plaintiffs, because Bulletin 3.5 was intended to avoid liability for certain unemployment taxes rather than to safeguard the classification plan and merit system principles, the Attorney General and superior court should not have considered it.

Plaintiffs read Bulletin 3.5 too narrowly. Bulletin 3.5 sets forth the internal guidelines for personal services contracts. Under the heading "Contractors and Employees," the Bulletin states the principle that contractors should not be used to do the continuing work of the government because such contracts would subvert the spirit and intent of the merit system. The Bulletin also states that an agency generally should not enter into personal service contracts if it would be liable for employment taxes. According to the Bulletin, these problems can usually be avoided by meeting criteria drawn from the so-called ABC test used for determining who pays unemployment compensation taxes. In examining the test's second criterion — that the service provided not be the kind usually provided by the agency — the Bulletin states that contracting out may be specially approved when cost savings of ten percent or more are likely, unless the contractor (1) will be asked to exercise sovereign powers, establish state policy, or represent government policies to the government; or (2) will work in close proximity to state employees doing the same or a very similar task. The Bulletin then warns that even if all of the

---

[3] Plaintiffs argue that the existence of other statutes expressly allowing for layoffs for reasons of economy demonstrates that legislative approval is required before an agency can contract out solely to save money. The plain language of 3 V.S.A. § 311(a)(10) refutes this argument. Under the statute, the classified service shall apply to all positions, "except as otherwise provided by law, *and* except the following," including certification by the Attorney General that a contract for services is not contrary to the spirit and intent of the classification plan and merit system principles. Further, the circumstances of this case demonstrate that the Legislature endorsed the contract, at least tacitly, by approving the 1994 fiscal-year budget after being informed of the Governor's proposed reduction of the Council's budget based on the contracting out of Academy food services.

ABC criteria are met, morale and labor relations problems may counsel agency managers against contracting for services substantially similar to work done by state employees within the agency. Viewed as a whole, the Bulletin is plainly aimed, at least in part, at satisfying merit system principles.[4] Cf. *Westchester County Civil Serv. Employees' Ass'n v. Cimino*, 396 N.Y.S.2d 692, 694 (Sup. Ct. 1977) (under New York law, contract for provision of services by private sector to government can be constitutionally challenged only where private contracting parties are controlled and supervised by government; key question is extent of control government exercises over private employees, not whether duties performed by private employees are identical to duties that had been performed by terminated state employees).

Plaintiffs also challenge the trial court's reliance on a provision of the collective bargaining agreement stating: "Consistent with statutory authority the State may contract out work. . . . No employee will be laid off . . . as a result of contracting out except in circumstances where . . . the work or program can be performed more economically under an outside contract." According to plaintiffs, this contractual language is irrelevant to the issue of whether the Attorney General abused his discretion in certifying the food-services contract under the classification statute. Although the collective bargaining agreement may be informative as to what the parties considered the law to be, we agree that the provision was not determinative as to whether the Attorney General acted within his discretion in certifying the contract under the classification statute. Nonetheless, as explained above, we find no abuse of discretion in the Attorney General's certification decision.

## III.

Finally, plaintiffs request that this Court adopt an objective test for certifying whether a contract violates the spirit and intent of the

---

[4] Plaintiffs complain that the superior court failed to consider that the certification of the instant contract was untimely under Bulletin 3.5. The Bulletin states: "No contract requiring prior approval should be executed until after all the required approvals have been obtained." Use of the word "should" and the absence of any stated consequences for failure to meet this obligation, however, suggest that the provision is directory rather than mandatory. See *In re O'Dea*, 159 Vt. 590, 597, 622 A.2d 507, 512 (1993) (although Judicial Conduct Board violated disciplinary control rule by waiting more than sixty days to issue final order, rule was directory rather than mandatory, and thus Board did not lose jurisdiction). In any event, plaintiffs fail to explain how the delay in certification rendered the Attorney General's decision unreasonable.

classification plan and merit system principles. Their proposed test would ask (1) whether the work that would be contracted out is presently being done by classified employees; (2) whether the contract would result in the layoff, transfer, or diminution of duties of classified employees; and (3) if the answer to either (1) or (2) is "yes," then whether there is express legislative authority for the proposed contract. Plaintiffs argue that, without such a test, the State can justify any contract based solely on a cost-savings analysis that fails to take into account the principles underpinning the classification plan and merit system.

■ Absent any constitutional imperative, we decline plaintiffs' invitation to impose conditions on the Attorney General's legislatively derived power to approve contracts between state agencies and private persons. See *State v. LaBounty*, 167 Vt. 25, 31-32, 702 A.2d 82, 86 (1997) (because no First Amendment right of access attaches to presentence investigation reports, we must respect Legislature's decision to treat those documents as confidential; criticisms of such policy must be directed to Legislature). We are concerned, however, over the lack of detailed guidelines and standards governing the privatization of state jobs, a growing nationwide phenomenon that, when viewed as a whole, has significant and often conflicting policy implications for the state personnel system. While privatization can increase governmental efficiency and productivity through cost savings, it also affects the qualifications and employment conditions of those performing government services. *Moore*, 875 P.2d at 770-71. Further, the competitive cost advantage of private companies may result from the absence of civil service constraints that are necessary to promote competence in government and ensure a politically independent civil service. *Colorado Ass'n of Public Employees v. Department of Highways*, 809 P.2d 988, 994 (Colo. 1991).

Other jurisdictions are divided on whether merit system principles bar or restrict agency discretion to privatize government services. *Moore*, 875 P.2d at 770 (citing cases). At least one state supreme court has held that state agencies cannot contract out state jobs absent legislation or rules establishing standards ensuring that privatization, when viewed as a whole rather than on a case-by-case basis, will not subvert the state personnel system. *Colorado Ass'n of Public Employees*, 809 P.2d at 994-95; see *Professional Engineers v. Department of Transp.*, 936 P.2d 473, 486 (Cal. 1997) (California, like most states, has substantial restrictions and requirements to protect civil service system from deterioration through private contracting); cf. Mass.

Gen. Laws Ann. ch. 7, §§ 52-56 (West 1996) (comprehensive statute stating conditions and criteria for privatizing government services).

As noted, we find no abuse of discretion in the Attorney General's decision to certify the instant contract. Nor is there any suggestion that privatization as a whole has undermined Vermont's state personnel system or its merit principles. But definite and specific standards setting forth conditions and requirements for privatization of state jobs are sorely lacking in this state. Given the complex and far-reaching policy implications at stake, the Legislature, not this Court, is in the best position to rectify this situation. See *Medical Center Hosp. v. Lorrain*, 165 Vt. 12, 16-17, 675 A.2d 1326, 1330 (1996) (problems concerning collection of hospital debts from underinsured married persons are best addressed in comprehensive way by Legislature).

*Affirmed.*