**TOWN OF VICTORY, et al. v. STATE of Vermont, et al.**

[814 A.2d 369]

No. 01-410

---

October 2, 2002. In this property tax case, plaintiff Town of Victory appeals from a summary judgment in favor of the State of Vermont. On appeal, the Town argues that: (1) the court erred by dismissing its claims for estoppel or equitable tolling of the 21-day statute of limitations for appraisals of land in the payment in lieu of taxes (PILOT) program; and (2) the court prematurely disposed of its claim for relief with respect to current use program land by converting the State's motion to dismiss into a motion for summary judgment and not allowing full discovery of facts essential to proving its case. We affirm as to the first claim of error, but reverse and remand for further proceedings as to the second claim of error.

The State of Vermont through the Agency of Natural Resources (ANR) owns approximately 19,000 acres of land in the Town of Victory. The land is comprised of the Victory State Forest and the Victory Basin Wildlife Management Area. In 1981, ANR placed 8724 acres of this land in the use value appraisal program, commonly known as the current use program, under 32 V.S.A. §§ 3751-3763a.

This dispute arises because land owned by the State of Vermont is exempt from property taxes. See 32 V.S.A. § 3802(1). The Legislature has, however, enacted a payment in lieu of taxes (PILOT) program for state-owned land. With respect to land held by ANR, the payment depends on whether the land is enrolled in the current use program. The land is first appraised at fair market value by the director of property valuation and review (PV&R). *Id.* § 3708(a).[1] If the land is not enrolled in the current use program, the State must pay one percent of the appraised value in lieu of property taxes. *Id.* § 3708(a)(1). A town aggrieved by an appraisal of the property can, within twenty-one days of receiving notice of the appraisal, appeal it to superior court. *Id.* § 3708(d).

The first issue relates to land not enrolled in the current use program. Each year 1989 through 1998, the director of PV&R set an appraisal value on the ANR land in Victory and notified the Town of the value. Each of these years the State made PILOT payments to Victory which

---

[1] 32 V.S.A. §·3708 was preceded by two functionally equivalent statutes, 32 V.S.A. § 3660 which was repealed on January 1, 1998, see 1997, No. 71 (Adj. Sess.), § 22, and 32 V.S.A. § 3701 which was amended on March 31, 1999, see 1999, No. 1, § 106a.

the Town accepted and never appealed within the 21-day period permitted by § 3708(d).

In December 2000, the Town brought this action in superior court alleging in relevant part that during the years 1989 through 1998 the director of PV&R had greatly undervalued the property and concealed from the Town that he had "knowingly, intentionally, maliciously, fraudulently and repeatedly" disregarded all proper appraisal methods in order that the State would pay less to the Town than it owed. The State moved to dismiss these claims because they were not brought for any year within the 21 day appeal period established in 32 V.S.A. § 3708(d).

The superior court first concluded that § 3708(d) provided the exclusive remedy for the Town's claims and that the Town could not employ it because the Town failed to appeal within 21 days. The court assumed, however, that the Town could get around the limitation period through equitable estoppel or equitable tolling, but, after allowing the Town to present further evidence, held that neither of these doctrines apply and granted summary judgment to the State on this issue. The Town argues here that they do.[2]

We agree that § 3708(d) represents the exclusive remedy for the Town's appeal and that the appeal is barred by the 21-day time limit unless the Town can find a legal justification for its tardy action. See *Brennan v. Town of Colchester,* 169 Vt.

_____

[2] The Town argues that the summary judgment was premature and complains about the procedure the court used to reach it. With respect to the second issue on appeal, as discussed *infra*, we have accepted and agreed with this argument. We do not believe, however, that it applies to the first issue because there is no indication that any evidence that could be developed through discovery would assist the Town.

175, 177, 730 A.2d 601, 603 (1999) (if legislature's intent can be derived from plain meaning of the words, further statutory construction is unnecessary); *Stone v. Errecart,* 165 Vt. 1, 4-5, 675 A.2d 1322, 1325 (1996) (in tax appeals, statutory provision for appeal is exclusive remedy); *Levy v. Town of St. Albans,* 152 Vt. 139, 141-42, 564 A.2d 1361, 1363 (1989) (when timely direct appeal of zoning board decision not taken, decision becomes final so that the determination can be relied upon).

In reviewing a decision to grant summary judgment, we apply the same standard as the trial court, that is, summary judgment should be granted when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Madden v. Omega Optical, Inc.,* 165 Vt. 306, 309, 683 A.2d 386, 389 (1996). We regard all allegations made in opposition to summary judgment as true, if supported by affidavits or other evidence. *Peters v. Mindell,* 159 Vt. 424, 426, 620 A.2d 1268, 1269 (1992).

The Town first argues that its late appeal is justified by equitable estoppel. The party invoking the doctrine of equitable estoppel has the burden of establishing four essential elements: (1) the party to be estopped must know the facts; (2) the party being estopped must intend that its conduct be acted upon; (3) the party asserting estoppel must be ignorant of the true facts; and (4) the party asserting the estoppel must rely on the conduct of the party to be estopped to its detriment. *Beecher v. Stratton Corp.,* 170 Vt. 137, 139-40, 743 A.2d 1093, 1096 (1999) (citing *Fisher v. Poole,* 142 Vt. 162, 168, 453 A.2d 408, 412 (1982)). "While the representations relied upon need not be fraudulent in a strict legal sense, generally a defendant is not estopped from raising a statute-of-limitations defense absent either a promise or some sort of misrepresentation or concealment of a fraudulent character." *Id.* at 139, 743 A.2d at 1095 (citation omitted). The court

will not invoke the doctrine in favor of a party whose own omissions contributed to the problem. *Id.* at 140, 743 A.2d at 1096. Viewing the facts most favorably to the Town, the superior court held that the first, third and fourth elements could not be demonstrated by the Town.

Taking these elements into consideration, we agree with the trial court's determination that equitable estoppel is not available to the Town. Most importantly, as the court noted, given the adversarial nature of the relationship between the Town and the State in property tax matters, it was not reasonable for the Town to accept the State's valuation without some inquiry into the basis of the valuation. *Lewis v. Cohen*, 157 Vt. 564, 569, 603 A.2d 352, 354 (1991) (where it is clear from the facts about the relationship of the parties that reliance should only follow an independent inquiry, then plaintiffs will be held to such an investigation). The State concealed nothing from the Town that would have prevented it from determining the basis of the appraisal if it had inquired. The State made its valuations and sent them to the Town. Even if the State failed to employ comparable sales data to determine fair market value, as the Town alleges, sales figures are found in public records and were available for the Town's review if it had inquired. Cf. *id.* at 569, 603 A.2d at 354 ("A central element of a fraud claim is that a misrepresentation be made as to a material fact, knowledge of which would be otherwise . . . unavailable to the purchasers in the exercise of their due diligence." (internal quotation omitted)).

We agree with the trial court that the Town's arguments for equitable tolling are even weaker. Courts apply the doctrine only when the defendant actively misled the plaintiff or prevented the plaintiff in some extraordinary way from filing a timely lawsuit, or the plaintiff timely raised the precise claim in the wrong forum. See *Longe v. Boise Cas-*

*cade Corp.*, 171 Vt. 214, 224-25, 762 A.2d 1248, 1257 (2000) (citing *Beecher*, 170 Vt. at 143, 743 A.2d at 1098). For the reasons stated above, the Town satisfies none of these conditions. The court properly granted summary judgment on the PILOT claims.

The second issue relates to ANR land enrolled in the current use program under 32 V.S.A. §§ 3751-3763a. For this land, the PILOT amount paid to the Town is one percent of the current use value. This value is determined by values and criteria developed by the current use advisory board and provided to the director of PV&R. See *id.* §§ 3754(a)-(c), 3752(6). The director then distributes the valuations to the towns, where the town listers are required to appraise all land registered in the program at the advisory board's values. See *id.* § 3754(c). Private landowners pay property tax based on the current use value. The listers also assign a fair market value to the land. See *id.* § 3756(h). For private owners, the State makes up the difference in property tax revenue by annually paying each town the difference between payments made under the current use program and the taxes that would have been collected if the property were assessed at fair market value. See *id.* § 3760. As set out above, the use value actually determines the Town's total revenue received for ANR property.

Landowners who decide to enroll property in the current use program must comply with a number of mandatory requirements. Specifically:

> (b) Managed forest land *shall* be eligible for use value appraisal under this subchapter *only if*:
>
> (1) the land is subject to a forest management plan, or subject to a conservation management plan . . . *signed by the owner* of a tract [which is con-

sidered managed forest land]
. . .

   (2) an annual report of conformance with any conservation or forest management plan, *signed by the owner*, has been filed with the department of forests, parks and recreation by February 1 of each tax year . . .

. . . .

   (c) At intervals not to exceed five years, the department of forests, parks and recreation *shall* audit the management plans and the conformance reports for each parcel of managed forest land qualified for use value appraisal. Likewise, at intervals not to exceed five years, that department *shall* inspect each tract to verify that the terms of the management plan have been carried out in a timely fashion. . . .

*Id.* § 3755(b), (c) (emphasis added). Based on the management plans, conformance reports, audits and inspections, the director of PV&R annually *"shall* determine whether previously classified property is still eligible for use value appraisal." *Id.* § 3756(f) (emphasis added). The statute further directs that the

> director *shall* remove from use value appraisal an entire parcel of managed forest land . . . when the department of forests, parks and recreation has not received a conformance report . . . unless the lack of conformance consists solely of the failure to make prescribed planned cutting. In that case, the director may delay removal from use value appraisal for a period of one year at a time to allow time to bring the parcel into conformance with the plan.

*Id.* § 3756(i) (emphasis added).

In its complaint, the Town alleged that the State failed to comply with the above requirements with respect to the land in the current use program and sought disenrollment of the land. The superior court granted summary judgment to the State on these claims. The Town argues here that the court granted the State summary judgment without allowing it necessary discovery and despite the existence of disputed material facts.

The Town filed its complaint on December 12, 2000, and the State responded with a motion to dismiss arguing that the Town had no remedy for the violations the Town alleged or that any remedy was barred by sovereign immunity. The parties traded memoranda of law until the court ruled in May 2001 that enrollment of the land in the current use program represented a discretionary, and not ministerial, duty and that the Town could seek relief under V.R.C.P. 75, but only for an extreme abuse of discretion or a clear and arbitrary abuse of authority. It decided that it would convert the motion to dismiss into a motion for summary judgment giving the Town "20 days [to file] a statement of contested facts, and any additional affidavit(s) or other supporting materials or memoranda, to further demonstrate the grounds on which the court could reasonably conclude that the State's current use enrollment decisions are not discretionary, and have been, or will continue to be a clear, extreme and arbitrary abuse of authority." It also ordered that if the Town needed discovery to make its summary judgment filings "it shall within those 20 days alternatively file a motion pursuant to V.R.C.P. 56(f) detailing *with specificity* what discovery is sought, and why it would be relevant and material." The State was given 15 days after the Town made its filings to file a counterstatement of uncontested facts, affidavits and memoranda and 10 days to respond to a motion for discovery.

The Town filed its submission within the specified period stating with specificity the ways in which it alleged that the State violated the current use statutes. It stated that the State had refused any discovery on its compliance with the current use statutes and the Town's claims were based on sworn testimony of state employees in a related case, of which the Town had ordered a transcript. For each of its claims of noncompliance the Town asked that if the State disputed them it be allowed to conduct discovery on the factual dispute and described the discovery sought. In its memorandum, the Town argued that the decision to enroll land in the current use program may be considered discretionary, but the specific requirements that the Town alleged that the State had violated with respect to enrolled land were mandatory.

The State responded with an affidavit of a state employee declaring that while the State had not complied with the current use requirements under the terminology in the statute, it had done the equivalent in its management of the Victory State Forest and the Victory Wildlife Management Area, the two areas that contained the current use land. The State included these assertions in a statement of material facts as to which there was no genuine issue. It argued that the Town had failed to comply with the court's order because it filed no affidavits supporting its claims and no statement of undisputed facts. It argued against giving the Town more time for discovery. It formally moved for summary judgment and argued that it had made a sufficient showing to obtain it.

The court ruled that the Town had failed to comply with the court's earlier order because it did not file any affidavits and did not file a motion for additional discovery under V.R.C.P. 56(f). With respect to the State's summary judgment motion, it faulted the Town for failing to respond to the State's statement of undisputed material facts. It reaffirmed

that the State enrollment decisions were discretionary and could be overturned only for a clear, extreme and arbitrary abuse of authority. It concluded that the State had showed that its state forest and wildlife management area land management actions represented substantial compliance with the current use program requirements.

For three reasons, we must reverse and remand the superior court ruling as premature. First, the mandated procedure restricted the Town's ability to comply with the court's directive. Although the court converted the State's motion to dismiss into a motion for summary judgment, it created a procedure as if the Town had filed the motion, requiring it to proceed first to demonstrate the factual issues and need for discovery. This procedure prejudiced the Town. The real factual dispute surfaced for the first time when the State, which had never answered the Town's complaint, presented in response to the Town's filing extensive factual material to argue that it substantially complied with the current use requirements.

Second, the court did not respond to the Town's demonstrated need for discovery, apparently because it never filed a document separately labeled as a V.R.C.P. 56(f) motion. While the court did speak of a motion in its original order, the issue appears to be one of form over substance. The rule does not require a motion. See V.R.C.P. 56(f). The Town detailed in its response why it would need discovery depending upon the State's response and what that discovery would be. It explained why that discovery had been unavailable in the past. The information was uniquely in the custody of the State.

The summary judgment rule, V.R.C.P. 56, does not require that the trial court wait until the completion of discovery to address a summary judgment motion, but does require "an adequate time for discovery." *Bushey v. Allstate Ins. Co.,*

164 Vt. 399, 405, 670 A.2d 807, 811 (1995) (adequate time for discovery where "a substantial amount of information," including depositions and answers to interrogatories, had been completed); see also *Poplaski v. Lamphere*, 152 Vt. 251, 255, 565 A.2d 1326, 1329 (1989) (adequate time for discovery where sixteen months between complaint and summary judgment hearing and eight months since signing of discovery schedule); *Doe v. Doe*, 172 Vt. 533, 535, 768 A.2d 1291, 1293 (2001) (mem.) (summary judgment premature where less than one month allowed for discovery).

This case is quite similar to the recent case of *Doe v. Doe*, in which we reversed the trial court's summary judgment decision in favor of the State because the plaintiff did not have an adequate opportunity for discovery. In *Doe*, the plaintiff requested discovery shortly after the State answered the complaint. Less than a month later, the State moved for summary judgment and a stay of discovery. The trial court granted summary judgment, dismissing all of the plaintiff's claims on the basis that the State was immune from suit. We reversed the trial court because, in effect, the plaintiff had no opportunity for discovery. 172 Vt. at 534, 768 A.2d at 1293.

Here, as in *Doe*, the Town, in effect, had no opportunity for discovery. The State immediately filed a motion to dismiss and resisted discovery in this and a companion case. The trial court took control of discovery when it converted the motion to dismiss into one for summary judgment and never allowed it before dismissing the Town's claims.

Third, the court's actions were based on an overly limited perception of the standard of review. The superior court concluded that because the State's duty to enroll or disenroll current use land was discretionary and not ministerial, the court could review the decision only for an extreme abuse of discretion. See *Vt. State Employees' Ass'n v. Vt. Criminal Justice Training Council*, 167 Vt. 191, 195, 704 A.2d 769, 771 (1997). We recognize that in the absence of an explicit statutory right of review, the Town could obtain relief under V.R.C.P. 75 only if it fit within the requirement of an extraordinary relief writ. See *id.* Whether we view the applicable writ as certiorari, see *In re Town of Mendon*, 127 Vt. 502, 503-04, 253 A.2d 139, 140 (1969) (review of action of county appraisal board) or mandamus, as did the trial court, the court's scope of review was broader than the trial court perceived. Specifically related to mandamus, the elements are "(1) the petitioner must have a clear and certain right to the action sought by the request for a writ; (2) the writ must be for the enforcement of ministerial duties, but not for review of the performance of official acts that involve the exercise of the official's judgment or discretion; and (3) there must be no other adequate remedy at law." *In re Fairchild*, 159 Vt. 125, 130, 616 A.2d 228, 231 (1992). Thus, mandamus allows relief where "decision-making is compelled by statute." *Brennan Woods Ltd. P'ship v. Town of Williston*, 173 Vt. 468, 473, 782 A.2d 1230, 1235 (2001) (mem.).

Here, the applicable current use requirements are stated in mandatory language. The Legislature directed that each of the requirements — a forest management plan, reports that show conformance with the plan, audits of the management plan and conformance reports, and inspections of the land to verify that the management plan is being carried out — "shall" be done in order to qualify for the current use program. 32 V.S.A. §§ 3755(b), (c), 3756(f). Furthermore, 32 V.S.A. § 3756(i) mandates that the director "shall" remove from the current use program any parcel for which a conformance report is not received. Use of the word "shall" in a statute generally means that the action is mandatory, as opposed to directory. See *Fraser v. Choiniere*, 133 Vt. 631, 633, 350

A.2d 755, 757 (1975) (V.R.C.P. 51(b), which states court shall inform attorneys of its decision on proposed jury instructions before arguments to the jury, held mandatory). The determination of whether statutory language is mandatory or directory is one of legislative intent. *In re Mullestein*, 148 Vt. 170, 174, 531 A.2d 890, 892 (1987). Statutory language should be construed as mandatory if the Legislature seeks "to impose a duty and not simply confer a privilege or discretionary power." *In re Estate of Cartmell*, 120 Vt. 228, 233, 138 A.2d 588, 591 (1958).

We are not suggesting that we have determined that the Town is entitled to relief or what relief might be appropriate. We hold only that the court had inadequate evidence on which to base its summary judgment decision.

*The superior court's decision to grant summary judgment to the State of Vermont dismissing the Town of Victory's claims with respect to land not enrolled in the current use program is affirmed. The remainder of the court's decision is reversed and remanded for proceedings consistent with this decision.*