STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT<br>Washington Unit | CIVIL DIVISION<br>Docket No. 299-9-20 Wncv |

Intralot, Inc.,
    Plaintiff

v.

Vermont Department of Buildings,
Jennifer M.V. Fitch,
Vermont Department of Liquor,
Patrick T. Delaney,
Gary Kessler,
    Defendants

**DECISION ON MOTION**

### The State's Motion to Dismiss and Request for Extension of Time

Plaintiff Intralot Inc. is the contractor that has been operating the Vermont lottery system since 2010. In 2018, the Vermont Department of Buildings and Grounds Office of Purchasing and Contracting (OPC) initiated a procurement process in preparation for the expiration of Intralot's contract. Intralot bid on the new contract but, following litigation, OPC voluntarily (without compulsion by the court) withdrew the request for proposals (RFP) in favor of starting over with a new procurement process. It issued a new RFP in 2020 in response to which Intralot and one competitor submitted bids. OPC is scheduled to open and evaluate those bids, and award the new contract, imminently, but it has not done so yet. Intralot is not content with the terms of the 2020 RFP and it has filed this action, prior to any contract award, seeking declaratory relief and an injunction essentially requiring OPC to again revise the terms of the RFP and start the bidding over. Intralot's motion for a preliminary injunction remains pending and is not the subject of this decision.

The State has filed a motion to dismiss, arguing that the court lacks subject matter jurisdiction insofar as Intralot lacks standing and has failed to exhaust its administrative remedies.[1] V.R.C.P. 12(b)(1). Otherwise, it argues that the complaint fails to state a claim. V.R.C.P. 12(b)(6). Intralot filed a timely opposition to dismissal on October 5. Under Rule 78(b)(1), any reply by the State was due October 19.

---

[1] The State also argues that Intralot's claims are not ripe insofar as the procurement process is not complete and Intralot has not yet failed to win the contract. It is unnecessary to address this argument because, in response to it, Intralot clearly asserts that its claims have nothing to do with winning the contract. In other words, the perceived unfairness that it is attempting to litigate in this case is independent of the outcome of the procurement process. As the court understands Intralot's relatively abstract position, its claims in this case would be no less viable even were the contract awarded to it. The loss it believes it is suffering relates to a claimed right to a fair bidding procedure only—not its outcome.

*The State's Request for an Extension*

On October 16, the State filed an "emergency motion for immediate stay." In the motion, the State represents that the facts have changed since it filed its dismissal motion and Intralot opposed it. It asserts that OPC has just determined that Intralot's proposal materially violates the RFP, and it now has rejected Intralot's bid on that basis. It seeks to stay this case but for the litigation of the dismissal motion, for which it seeks more time to file its reply, ostensibly to incorporate the "new" facts into the standing argument it presented in its motion. Intralot has not responded yet to the motion to stay.

The State's motion to stay is denied regarding any extension of time for the filing of its reply. See *Bigelow v. Dep't of Taxes*, 163 Vt. 33, 37–38 (1994) (explaining that raising a new issue for the first time in a reply brief improperly deprives the opposing party of a fair opportunity to respond). The reply contemplated by the State would improperly assert a new basis for dismissal, leaving Intralot no opportunity to oppose it. Thus, the court addresses here the State's motion to dismiss as briefed by the parties on the state of the record at the time of that briefing, disregarding any factual representations in the motion to stay, which remains pending otherwise.

*The State's Motion to Dismiss*

The court thus turns to the State's motion to dismiss, which is fully briefed.

*Standing and exhaustion*

As a preliminary matter, the court declines to address the State's standing and exhaustion arguments in detail at this time.[2] On the current record, it is not clear that they are a good fit for the circumstances of this case. The State relies heavily on *Hinesburg Sand & Gravel Co., Inc. v. State*, 166 Vt. 337 (1997), to argue that there is no cognizable injury in this case. Indeed, the *Hinesburg* Court determined that it was dealing with "a routine procurement dispute dressed up as a civil rights claim" without any underlying "legally protected interest" to support standing. *Id.* at 342. In this case, by contrast, Intralot alleges that the State has singled it out—not its product or service as was the case in *Hinesburg*—and purposely acted to disadvantage it.

The "quest for injury" when "turned back" into a search for a legally protected interest can easily and improperly "blend imperceptibly with the common tendency to use standing concepts to address the question whether the plaintiff has stated a claim." 13A Wright & Miller et al., Fed. Prac. & Proc. Juris. § 3531.4 (3d ed.); see also *id.* § 3531 ("The question whether the law recognizes the cause of action stated by a plaintiff is frequently transformed into

---

[2] Intralot represents that this court *already* has ruled on the standing issue presented here insofar as it ruled on standing in Intralot's favor in a prior case against OPC, addressing a different procurement process, filed in this court. The court reminds the parties that prior decisions in different trial court cases are only as useful here as they are persuasive. Unless they have some preclusive effect on this case (and none has been asserted), they are not binding, and the court will not reflexively treat them as having decided any issue presented in this case merely because a similar issue may have been presented in a prior case.

2

inappropriate standing terms. The Supreme Court has stated succinctly that the cause-of-action question is not a question of standing."); *Wool v. Off. of Prof. Reg.*, 2020 VT 44, ¶ 11 ("The purpose of the standing doctrine is not to weed out unmeritorious claims; it is to determine whether the 'plaintiff's stake in the outcome of the controversy is sufficient "to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions."'"). It is not clear to the court that the State has identified a defect in standing, at least as the record of this case has unfolded thus far.

The State's exhaustion argument also is a poor fit, and the court declines to address it in detail on this record. Essentially, the State argues that its RFP allowed bidders to ask questions, seek clarification, and apparently allege unlawfulness, and it bars the assertion of any legal claims against it in court that were not, under those RFP procedures, first presented to OPC. Beyond the facial language of the RFP itself, the State does not predicate its exhaustion argument on any authority expressly directing or permitting OPC to restrict bidders' access to the courts in this fashion. Otherwise, the State's argument creates an odd circularity because Intralot's chief allegation is that OPC intentionally concocted the very RFP that contains these terms with the avowed purpose of guaranteeing that Intralot's competitor would win, and Intralot would lose, the contract.

### Failure to state a claim upon which relief can be granted

To understand the State's motion on Rule 12(b)(6) grounds, it is important to first understand how Intralot styled its claims in the complaint. After 15 pages of general allegations, the complaint describes count 1 as seeking injunctive relief, count 2 as seeking declaratory relief, count 3 as asserting a violation of Vermont's Common Benefits Clause, and count 4 as asserting a violation of the Equal Protection Clause. Intralot's constitutional claims are, essentially "class of one" claims to the effect that OPC unconstitutionally singled it out for unfair treatment.

### Intralot's non-constitutional claims

Its counts 1 and 2 are more elusive. Injunctions and declarations are *relief*, not *legal claims*. Under counts 1 and 2, other than generally asserted unfairness, Intralot does not describe any particular legal claim that might support injunctive or declaratory relief. Evidently based on Intralot's general allegations (the first 15 pages of the complaint), the State infers that Intralot is claiming some breach of Administrative Bulletin 3.5 (Agency of Administration Procurement and Contracting Procedures) or 29 V.S.A. § 903 (requisition for supplies and materials). In its opposition, Intralot clearly says that it is *not* claiming any breach of Bulletin 3.5.[3] Rather, it claims a breach of 29 V.S.A. § 903 and Executive Order 3-20 (Recognition and Encouragement of Vermont Minority/Women Business Enterprises Partnership). It also cites mandamus (Rule 75) and 3 V.S.A. § 807. No claim is stated on the asserted bases.

---

[3] More particularly, Intralot represents that it is not claiming any actionable breach of Bulletin 3.5 but, in the same breath, that it nevertheless views Bulletin 3.5 as the best available expression of the standards of fairness motivating this litigation. It is unclear what actual use of Bulletin 3.5 Intralot may intend apart from asserting any actionable breach of its terms.

3

*29 V.S.A. § 903*

Section 903 of Title 29 generally directs the Commissioner of Buildings and General Services (BGS) to ensure that relevant purchases are in the best interests of the State and, where BGS proceeds by a bidding process that does not end up best serving the State's interests, authorizes BGS to reject all bids and proceed by whatever other process will serve the State's best interests. 29 V.S.A. § 903(a).

To evaluate best interests, BGS is directed generally to consider, as relevant, the following items:

> (1) specified quality; (2) price; (3) ease of access of supply; (4) incidental administrative costs; (5) proven reliability of bidder; (6) use of recycled materials or products; (7) minimizing the creation, by the State, of solid waste; (8) the extent to which the usage of the item involves the generation of pollutants; (9) life cycle costs, if required under the State Agency Energy Plan, as implemented; (10) the interests of the State relating to the proximity of the supplier and the costs of transportation, and relating to the economy of the State and the need to maintain and create jobs in the State; and (11) the use of railroads and the increased revenues returning to the State from its railroad leasing program.

29 V.S.A. § 903(b). Other than requiring BGS to consider these items, this and related statutes do not limit BGS's discretion, which plainly is exceedingly broad, other than by the generally asserted best-interests standard.

Neither § 903 nor related statutes expressly give anyone, much less a bidder or other seller, any cause of action to enforce § 903 against the State. Similarly, nothing in § 903 implies that it is intended to protect bidders and sellers and implicitly should be enforceable by them. Rather, it clearly is intended to protect the best interests of the State. Intralot's argument, that it is somehow empowered to litigate whether the RFP actually serves the State's best interests, obviously and unnecessarily creates a fox-in-the-henhouse dilemma not contemplated by the statute. Section 903 squarely commits the determination of the State's best interests to BGS and does not envision a bidder or seller who is disappointed with BGS (either prospectively or retrospectively) to hijack BGS's exercise of discretion. (the court trusts BGS has sought and been properly advised by legal counsel, ie: the Attorney General's office, in this, as in all complex contract processes)

Intralot's citation to "mandamus" and the Declaratory Judgments Act does not avoid this critical defect in its reasoning. "A court can issue a writ of mandamus . . . only under certain circumstances: (1) the petitioner must have a clear and certain right to the action sought by the request for a writ; (2) the writ must be for the enforcement of ministerial duties, but not for review of the performance of official acts that involve the exercise of the official's judgment or discretion; and (3) there must be no other adequate remedy at law." *Petition of Fairchild*, 159 Vt. 125, 130 (1992). Section 903 gives Intralot no clear and certain right and it imposes no ministerial duties. See *Bargman v. Brewer*, 142 Vt. 367, 369 (1983) (noting that a ministerial act is one "regarding which nothing is left to discretion" (citation omitted)).

The Declaratory Judgment Act is similarly unavailing. Intralot is attempting to use the Act as a proxy for a legal claim. However, the Act "allows parties who have a dispute within a court's jurisdiction to petition that court for declaratory relief at an early stage of the proceedings; [it] does not increase or enlarge the jurisdiction of the court over any subject matter or parties." *Vermont State Employees' Ass'n, Inc. v. Vermont Crim. J. Training Council*, 167 Vt. 191, 194 (1997). The Act does not create a claim where one could not exist otherwise. To the extent that Intralot invokes it, the Administrative Procedures Act (APA) also does not authorize a declaratory judgment action in these circumstances. The APA allows a declaratory action to determine the "validity or applicability of a rule," 3 V.S.A. § 807, but there is no "rule," 3 V.S.A. § 801(b)(9), at issue in this case.

*Executive Order No. 3-20*

Intralot also purports to be seeking to enforce Executive Order No. 3-20. EO 3-20 was issued in 1991 by former Governor Howard Dean. It reflects that the "Vermont Minority/Women Business Enterprises Partnership was mandated to develop a plan to facilitate equal access and maximum opportunity to participate in state contracting procedures . . . to ensure nondiscrimination in state contracting programs." In response, the EO generally "prescribes [to executive branch agencies] to a free and open bidding process that affords all businesses equal access and opportunity to compete for state contracts for goods and services." The EO does not also prescribe any cause of action by bidders or sellers to enforce the EO against the State, and no accompanying legislation creates or implies any such cause of action.

Executive Order No. 3-20 does not give Intralot a cause of action to enforce its terms against the State. "Courts ordinarily dismiss suits to compel agencies to comply with executive orders, even when the orders are issued pursuant to legislation. Generally, in order to create a right of action, either Congress in authorizing the executive order or the President in issuing it must clearly establish a cause of action." 3 Admin. L. & Prac. § 7:31 (3d ed.) (footnotes omitted); see also *In re Surface Min. Reg. Litig.*, 627 F.2d 1346, 1357 (D.C. Cir. 1980) ("This court has also declared that executive orders without specific foundation in congressional action are not judicially enforceable in private civil suits.").

*Intralot's constitutional claims*

Under both the Common Benefits Clause and the Equal Protection Clause, Intralot asserts a "class of one" claim. It asserts that agents of OPC, in an effort to single out and harm Intralot, and with detailed knowledge of Intralot and the only other bidder that could be anticipated, carefully crafted the RFP to appear nondiscriminatory on its face but to actually include arbitrary and discriminatory provisions for no purpose other than to vindictively harm Intralot and benefit Intralot's competitor. These claims are somewhat abstract insofar as they are predicated on an alleged loss of the chance to compete fairly rather than an unfavorable outcome to the procurement process. The State argues that they altogether fail to survive Rule 12(b)(6) and should be dismissed.

In essence, the State argues that these claims are novel and extreme, exceptionally unlikely to succeed on the merits, and therefore should be dismissed sooner rather than later. The Vermont Supreme Court has been clear that the general pleading standard in Vermont is especially minimal. See *Bock v. Gold*, 2008 VT 81, ¶ 4, 184 Vt. 575 ("the threshold a plaintiff must cross in order to meet our notice-pleading standard is 'exceedingly low'"); *Colby v. Umbrella, Inc.*, 2008 VT 20, ¶ 13, 184 Vt. 1 ("The complaint is a bare bones statement that merely provides the defendant with notice of the claims against it."). A motion to dismiss for failure to state a claim upon which relief can be granted should be denied unless it is beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief. *Powers v. Office of Child Support*, 173 Vt. 390, 395 (2002). Vermont's liberal Rule 12(b)(6) standard invites novel and extreme claims; it is not properly employed to dismiss them prematurely. *Alger v. Dept. of Lab. & Indus.*, 2006 VT 115, ¶ 12, 181 Vt. 309.

In general, class-of-one equal protection law in Vermont is seriously undeveloped. But for a few notable exceptions, more general case law evaluating the rights of bidders on State contracts also is undeveloped. While Intralot's claims in this case may be novel and extreme, the court concludes that the wiser course will be to address them on the evidence, whether in the course of injunction proceedings, summary judgment, or at trial.

## ORDER

For the foregoing reasons, the State's motion to stay is denied with regard to an extension of time and otherwise remains pending. The State's motion to dismiss is granted as to Intralot's non-constitutional claims; it is denied as to Intralot's constitutional claims.



Robert R. Bent,
Judge

6