THE PRESIDENT, DIRECTORS & CO. OF THE GRAFTON BANK *v.* WILLIAM DOE, CALEB STEVENS, JR., JOHN ATWOOD, BENJAMIN ATWOOD, FRANK P. JOHNSON, MOSES JOHNSON AND HIRAM JOHNSON.

## IN CHANCERY.

The statute of limitations does not begin to run upon a demand, until the *principal,* or at least some separate and distinct portion of the principal, becomes due and payable,—and then only upon such distinct and separate portion. The interest, accruing from year to year, is not thus separated from the principal demand, and consequently the statute of limitations does not run upon it, until the principal is barred by the statute.

The neglect of the holder of a promissory note, secured by mortgage, to present the note for allowance by the commissioners appointed to receive and adjust claims against the estate of the deceased maker, does not preclude him from afterwards enforcing the mortgage security; it merely precludes him from claiming any dividend or portion of the assets of the estate in the hands of the administrator.

Courts are never at liberty to presume payment from *mere lapse* of time, in any period less than that which is fixed by the statute of limitations.

The answer of a defendant to a bill of foreclosure, averring distinctly, that, at a certain time, he paid to the administrator of the mortgagor a certain amount of money, which sum the administrator, in presence of the defendant, paid to the orator, to be applied to the payment of the mortgage note, is strictly responsive to the bill, and therefore legitimate evidence in the case.

APPEAL from the court of chancery. The orators alleged in their bill, that Martha Porter, on the eighth of September, 1823, was indebted to the orators in the sum of five hundred dollars, specified in a promissory note of that date, payable in four years, with interest annually; that on the twelfth of March, 1825, she executed to the orators a mortgage deed of certain land in Newbury, to secure the payment of said note; that she died September 27, 1825, leaving a will; that William T. Haddock was appointed executor of her will in New-Hampshire, and administrator, with the will annexed, in Vermont; that Haddock, by virtue of a power contained

in the will, sold and conveyed, by deed, the mortgaged premises, in separate and distinct parcels, to the several defendants named in the bill, and those under whom they claim; and that the note still remained due and unpaid. And the orator prayed for a foreclosure of the defendants' equity of redemption in the premises. The subpœna was issued August 4, 1841, and was served upon the defendants September 1, 1841.

The defendants answered, admitting the execution of the note and mortgage by Martha Porter to the orators, but insisting upon the statute of limitations, and insisting that the note should have been presented to the commissioners upon Martha Porter's estate; and they also averred, that they were informed and believed, that Haddock had paid the note to the orators;—and the defendant Doe alleged, that he, as agent of his father, to whom Haddock conveyed that portion of the mortgaged premises now held by this defendant, did, immediately after the conveyance by Haddock of the mortgaged premises, pay to Haddock, in the banking house of the orators, at Haverhill, the sum of four hundred dollars, and that Haddock then and there, in the presence of this defendant, paid the same sum to the cashier of the orators, towards the mortgage note; and the defendant Stevens alleged, that soon after the payment of the purchase money of the mortgaged premises, by the purchasers, to Haddock, he, feeling anxious about the mortgage and that the same should be discharged by Haddock, went to the banking house of the orators and inquired of the cashier respecting the same, and that the cashier then informed him, that Haddock had paid the mortgage, and that he thereupon so informed the purchasers.

The defendants also filed a cross bill, setting forth, in substance, the matters alleged in their answers to the original bill, and making the orators in that bill and Daniel Blaisdell, who was administrator -*de bonis non* upon the estate of Martha Porter, defendants; and the orators in the cross bill prayed, that the defendants might be required to disclose, whether the note, or any part thereof, had been paid; and, if not, that it might be paid from the assets in the hands of Blaisdell, as administrator. The defendants in the cross bill answered,—the Grafton Bank denying that the note, or any part of it, had been paid; and Blaisdell alleging that all the assets, which

had come to his hands as administrator, had been distributed pursuant to a decree of the probate court in New Hampshire.

The answers to the original bill and cross bill were traversed, and testimony was taken upon both sides,—the substance of which sufficiently appears from the opinion of the court.

The court of chancery, December Term, 1844,—HEBARD, Ch. —decreed, that the cross bill be dismissed, with costs, that the original bill be dismissed, as to Hiram Johnson, with costs, and that the other defendants pay the sum due in equity upon the mortgage note, reported by the master to be $1420,95, by a day fixed, or be foreclosed of all equity of redemption in the premises. - From this decree the defendants appealed.

*L. B. Peck* and *S. Austin* for orators.

1. This suit was instituted within fourteen years after the note became due; and, as there is a subscribing witness to the note, the case is not within the statute of limitations.

2. There is no evidence tending to show that the note has been paid, excepting the deposition of Thomas J. Doe, who testifies to the declaration of Haddock and of the orators' cashier, Bunce. The orators are not affected by these declarations; and the deposition should be suppressed. The depositions of Bunce and Page disprove these admissions, and show that they were not true, if made. The answer of the orators to the cross bill is also evidence against the defendants.

*A. Underwood* for defendants.

1. We insist that the orators are barred from a recovery, by reason of their not having presented their note before the commissioners upon the estate of Martha Porter. Sl. St. 353, § 91. In case of a note and mortgage, the note is the principal matter. The mortgage is only an incident; and if the debt is gone, by payment, or by discharge in any other way, by act of the parties, or by operation of law, the mortgage must share the same fate. *Martin v. Mawlin,* 2 Burr. 343. Sl. St. 343. 2 Fonbl. 490, n. *Hawkins v. King,* 2 Marsh. 109. *Barnes v. Lee,* 1 Bibb 526. *McDaniels v. Reed,* 17 Vt. 681. If this claim had been presented to the commissioners and disallowed, and no appeal taken, it will not be

59

pretended, that the disallowance would not have been a good bar to a bill of foreclosure. *A fortiori* the orators should be barred, not having presented their claim; as the statute, in express terms, creates a *perpetual bar* for that reason. *Warren* v. *Saxby*, 12 Vt. 146. *Hunt* v. *Fay*, 7 Vt. 170. *McCollum* v. *Hinckley et al.*, *Ex'rs*, 9 Vt. 143.

2. The orators are barred by the statute of limitations of fifteen years,—which applies equally to a bill of foreclosure and to an action of ejectment; *Hunt et al.* v. *Wickliffe*, 2 Pet. 201; *Lewis* v. *Marshall*, 5 Pet. 470; Fonbl. Eq. 243, 244; *Roosevelt* v. *Mark*, 6 Johns. Ch. R. 266; 4 Kent 187; *Staniford* v. *Tuttle*, 4 Vt. 82. *Collard's Adm'r* v. *Tuttle*, 4 Vt. 492. The statute began to run from the time the orators' cause of action *for the recovery of the land* first accured. The cause of action, in this case, accrued in one year from the date of the note, or in one year from the day of the discount thereof, (April 30, 1825,) the note being on interest annually. Between either of these dates and the date of the subpœna more than fifteen years intervened. Sl. St. 289, § 6. Rev. St. 305, § 1. *Battley* v. *Faulkner*, 5 E. C. L. 288. *Smith* v. *Smith*, 15 Vt. 620.

3. The defendants insist, that the note was paid in 1826, and that the fact is made out from a fair balance of proof and the circumstances.

4. The court ought to *presume* payment from lapse of time and the other circumstances. 1 Stark. Ev. 34. *Conner* v. *Chase et al.*, 15 Vt. 782. 1 Greenl. Ev. 21, 47.

The opinion of the court was delivered by·

KELLOGG, J. The defendants insist, that the orators are not entitled to a decree.

In the first place they say the cause of action is barred by the statute of limitations. The mortgage note bears date September 8, 1823, and is made payable in four years, with interest annually, and is witnessed. The subpœna to the orators' bill was issued August 4, 1841, and served September 1, 1841. The note, being witnessed, would not be barred by the statute, until the expiration of fourteen years after it fell due. By its terms it fell due on the 8th of September, 1827; and fourteen years from that time would

expire on the 8th of September, 1841,—which was several days after the issuing, and even service, of the orators' process.

But it is said, that, as the note is made payable with annual inter- .est, the *cause of action* accrued when the first year's interest fell due, and that the statute of limitations should be computed from that time. The note was discounted in the month of April, 1825; and, as the period fixed by the terms of the contract, for the payment of the interest yearly, was the 8th of September, it is believed, that no interest could legally be demanded upon the note anterior to September, 1826. This would be more than fourteen years previous to the commencement of this suit. When the next year's interest fell due, the eighth of September, 1827, it was less ` than fourteen years.

If this exception should prevail, we suppose it will hardly be contended, that it should operate upon any greater portion of the demand, than the orators could enforce the collection of; which was one year's interest. But we think that this exception is not well taken. It is true, that the orators' might have instituted their suit for the recovery of the year's interest; but they were not bound to do it. The statute does not begin to run upon the demand, until the *principal*, or at least some *separate* and *distinct portion* of the principal, becomes due and payable,—and then only upon such distinct and separate portion. The accruing interest from year to year is not thus separated from the *principal demand*; and consequently the statute of limitations does not run upon it, until the principal is barred by the statute.

It is farther insisted, that the orators' demand, the mortgage note, is barred by reason of its not being presented to the commissioners upon the estate of Martha Porter. It is unquestionably true, that the orators, by reason of their failure to present the note to the commissioners, are precluded from claiming any dividend or portion of the assets in the hands of the administrator, and will be compelled to rely solely upon the property pledged to them, the mortgaged premises, for obtaining payment of their demand. No adjudged case is produced to support this position of the defendants; and we . think it cannot be sustained.

It is farther urged by the defendants, that the court should presume payment of the demand from lapse of time. We take it to be

Grafton Bank *v.* Doe et al.

well settled, that courts are never at liberty to presume payment from *mere lapse* of time, in any period less than that which is fixed by the statute of limitations. To hold otherwise would virtually be a repeal of the statute. No doubt, lapse of time, connected with other circumstances and evidence tending to prove payment, may legitimately aid in establishing the fact. We do not, however, deem the lapse of time sufficient to establish the fact of the payment of the note, in this case.

The defendants farther insist, that the note was actually paid, and that this fact is satisfactorily established by the proofs in the case. The evidence, upon which the defendants rely as tending to show the payment of the entire amount of the note, is the testimony of Thomas J. Doe, who testifies to the declarations of Bunce, the cashier of the bank, made to him in 1827. This conversation is denied by Bunce. It is true, that this witness testifies, that in May, 1826, he paid to Haddock $100, and that Haddock said he wanted it to pay to the bank to take up the mortgage with; but there is no direct evidence, that this money ever went to the bank. We are not therefore satisfied, upon this evidence, that the mortgage note was paid.

There is, however, evidence tending to show at least part payment of the note. The defendant Doe, in his answer, expressly states, that, soon after the conveyance of the land by Haddock, he, as agent for his father, paid to Haddock, at the bank of the orators, $400,00, and that Haddock then paid the same money to the cashier, to be applied to the payment of the mortgage. The answer, in this respect, is strictly *responsive* to the bill, and therefore legitimate evidence in the case. This, however, is denied by Bunce. His denial is, and must necessarily be, of a negative character, that he has no knowledge, or remembrance, of the same. Page, the succeeding cashier, testifies to an examination of the books and papers of the bank, and that he finds no entry of money paid by Martha Porter, or others for her, to be applied upon the mortgage. The question then arises, is there any evidence in the case to corroborate and support the answer of Doe.

The orators have put into the case a transcript of Haddock's account with the bank, by which it appears, that, on the 26th of July 1826, he paid into the bank $380,12; which is credited in his ac-

count. This, we think, does, to some extent, sustain the answer of Doe. The time of the credit corresponds very well with the time of payment stated in the answer, which was soon after the conveyance of the land, the last of which was in the month of May, 1826. It is true, that the sums do not precisely correspond ; but it would not be matter of surprise, that, after such a lapse of time, Doe should not recollect the precise sum which he paid ; and if the sum was near $400, that sum would be most likely to be impressed upon his mind. Now, we are inclined to believe, that the sum of $380,12, the amount credited to Haddock on the 26th of July, 1826, was the amount paid by Doe to Haddock, and that the same was then understood by the parties to be paid towards the extinguishment of the mortgage. It is true, that the account shows that during the succeeding month the bank paid to Haddock, at different times, an amount equal to the aforesaid credit ; yet we are induced to believe it was in violation of the understanding of the parties at the time the credit was entered, and a misapplication of the money. We think they were bound to apply that amount upon the mortgage note.

The result is, that the decree of the chancellor must be reversed and the case remanded to the court of chancery, with instructions to enter a decree for the orators, computing interest upon the orators' note from the month of April, 1825, to the 26th of July, 1826, and then deducting from the amount the sum of $380,12, and casting interest upon the balance to the time of the decree ; and that he allow such time to the defendant, to redeem the premises by paying the amount decreed to the orators, as the chancellor shall be advised is just and reasonable ; the orators to tax no costs in this court ; and the defendants' costs in this court to be deducted from the orators' costs in the court of chancery. The cross bill is to be dismissed without costs.