### In re Raymond L. Rebideau

[448 A.2d 144]

No. 189-81

Present: Barney, C.J., Billings and Hill, JJ., and Shangraw, C.J., and Daley, J. (Ret.), Specially Assigned

Opinion Filed May 20, 1982

Dorsch and Hertz, Brattleboro, for Petitioner.

John J. Easton, Jr., Attorney General, and Susan R. Harritt and James R. Crucitti, Assistant Attorneys General, Montpelier, for Defendant.

Barney, C.J. This is an appeal from a denial of post-conviction relief in Addison Superior Court in 1977. The defendant seeks to overturn a nine-year-old conviction of first degree murder for his involvement in the shooting death of Raymond Lestage in 1972. We are called upon to determine whether

the defendant's right to due process was violated by what he alleges to be the prosecutor's knowing use of perjured testimony against him and his suppression of information about one of the murder weapons, either of which the defendant claims would have aided his cause.

The facts of this case have already been detailed in other opinions. *State* v. *Berard*, 134 Vt. 220, 356 A.2d 514 (1976); *State* v. *Woodmansee*, 133 Vt. 449, 344 A.2d 26 (1975); *State* v. *Rebideau*, 132 Vt. 445, 321 A.2d 58 (1974); *State* v. *Berard*, 132 Vt. 138, 315 A.2d 501 (1974). Briefly, the defendant and one Frank Berard were found to have shot Raymond Lestage in a Royalton cemetery, Berard with a revolver and the defendant with a shotgun, in the presence of a woman named Linda Badore.

Following the defendant's conviction in March, 1973, he moved for a new trial on several grounds, none of which is relevant to this appeal. That motion was denied. The defendant was sentenced to life imprisonment in April, 1973, and three months later filed a petition for a new trial alleging newly discovered evidence. This petition was withdrawn when it appeared that the entire case was under mandatory consideration by this Court pursuant to statutory appeal. That first appeal was heard and decided adversely to the defendant in June, 1974, but the issue of new evidence was never addressed in our decision since it had not been passed on below.

The defendant next filed a petition for post-conviction relief or, in the alternative, a motion for new trial, in July, 1975. This petition was amended in January, 1976, and, after a series of motions, heard in July of 1977. In his petition the defendant claimed that the State's knowing use of perjured testimony and its suppression of ballistics information concerning one of the murder weapons had violated his right to due process of law. This petition and the alternative motion were denied in September, 1977. The trial court determined that the defendant had not shown either knowing use of perjured testimony or knowing suppression of exculpatory information, and added that even if he had, in neither case would there be cause for reversal of the conviction. The bases for that court's conclusions will be developed as we pursue review.

The defendant appealed the lower court's order denying relief, but that appeal, being out of time, was denied.

A second post-conviction relief petition was then brought maintaining the defendant's right to have the substantive issues he had raised in his first petition reviewed, notwithstanding the ineffective assistance of counsel which had resulted in the untimely notice of appeal. He requested permission to file a second appeal. The lower court considered the substantive issues underlying the petition and denied the request, but on appeal we reversed in *In re Rebideau*, 139 Vt. 530, 431 A.2d 484 (1981), noting that denial of review under the circumstances was of prejudicial dimension. The filing of the present, third, appeal from the decision on the first petition timely followed.

 As we have recently stated, post-conviction relief is not a vehicle for reexamining a defendant's guilt or innocence, but is rather designed to correct fundamental trial errors without jeopardizing the State's interest in finality. *In re Stewart*, 140 Vt. 351, 361, 438 A.2d 1106, 1110 (1981). The defendant bringing such a petition is required to establish the infirmity of his conviction—in this case that his due process rights were violated—by a preponderance of the evidence. *Id.*

In support of his allegation that the prosecution knowingly used perjured testimony of two witnesses, the defendant looks to a post-trial comment by the prosecutor to a reporter to the effect that he had a "gut feeling" two witnesses were not telling the whole truth. He also asks us to examine testimony from his co-defendant's trial, as well as our own opinion in that case on appeal. At issue is the testimony of Joseph Bartlett, the defendant's landlord, and Robert Blanchard, Bartlett's brother-in-law.

Bartlett testified at the defendant's trial that approximately six weeks after Raymond Lestage's murder he discovered a .22 caliber revolver at a vacant lot which he owned adjoining his apartment building, which he showed to his brother-in-law Blanchard. Blanchard then testified that he was the owner of the revolver, that it had been stolen from him sometime in the summer of 1972, and that he took it from Bartlett and kept it for a few months before turning

it over to a police officer named Lahue. During the defend-
ant's trial Bartlett was not cross-examined at all, and Blanch-
ard only mildly. Blanchard was asked whether the story he
was giving in court was the same story he had given to Lahue
at the time he turned over the revolver. He replied, "I believe
so. I can't remember," and was not cross-examined further.
The police officer, Lahue, was not called as a witness.

By contrast, at the earlier Berard trial, testimony estab-
lished that the revolver had been loaned by Blanchard to
Bartlett two or three days before the homicide, and had been
returned by Bartlett to Blanchard two or three days after
the homicide with the comment that it had been used in the
murder of Raymond Lestage. *State* v. *Berard, supra,* 132 Vt.
at 143–44, 315 A.2d at 506. Both Bartlett and Blanchard
were called to testify, as was officer Lahue. That more atten-
tion was focused on the matter in the Berard trial is not sur-
prising in light of the fact that it was Berard, not this de-
fendant, who was accused of shooting Lestage with the re-
volver in question.

The State responds that even if the record were so enlarged
it would not aid the defendant's case. This is demonstrably
so.

Even if the testimony of officer Lahue were included in this
record on appeal, at best it demonstrates an inconsistency
in the stories told by a chain-of-custody witness about that
witness' own relationship to a weapon not even alleged to
have been used by the defendant in the murder of Lestage.
Furthermore, the statements the defendant seeks to include
were not made under oath, and were made by Blanchard in
an effort to establish immunity for himself in an unrelated
offense. Under these circumstances it is not surprising that
defense counsel did not bother to pursue the matter in his
cross-examination of Blanchard, or in his decision not to call
Lahue as a witness in this defendant's trial.

In this context, the fact that the prosecutor admitted at
the defendant's post-conviction relief hearing that he might
have told a reporter after the defendant's trial that "two
birds were holding back on the truth while they testified.
They were lying, and the juries in all three cases apparently
saw through them," does not persuade us that a different
result is required.

. The prosecutor testified, and the trial court found, that the prosecutor had no evidence that the witnesses had perjured themselves when they were deposed, when they testified at inquest, or in their testimony at defendant's trial. His comment was a statement of general impression based on all the circumstances surrounding the murder, of which defense counsel was, or should have been, equally aware.

 Officer Lahue was available for deposition in the Rebideau case, appeared on the State's list of potential witnesses, and at the time of the Rebideau trial, his testimony at the Berard trial was part of the public record. The existing record in this case even discloses that defense counsel broached the issue of the inconsistent stories, then chose to turn away. The State is under no obligation to make a witness' prior statement known to a defendant who is on notice of the essential facts which would enable him to call the witness himself and thus take advantage of any exculpatory testimony he might provide. *United States* v. *Di Giovanni*, 544 F.2d 642, 645 (2d Cir. 1976) (quoting *United States* v. *Stewart*, 513 F.2d 957, 960 (2d Cir. 1975)).

The defendant's second allegation is that the State knew at the time of his trial that the revolver used in the killing of Lestage had since been used in a second homicide committed when both of the co-defendants were incarcerated, and that it suppressed this information, resulting in prejudice to the defendant. Once again we must agree with the trial court that the defendant failed to carry his burden of proof.

The firearms examiner who tested the revolver testified at the post-conviction relief hearing that he had received the gun on October 13, 1972, and had issued his report linking it to the Lestage killing on October 18th. He further testified that on March 7, 1973, he received several bullets implicated in the death of one Lloyd Fitzgerald, and that on April 6 he issued another report indicating that the same revolver used to kill Lestage had been used in the Fitzgerald homicide as well. But the examiner was unable to recall at what point prior to the issuance of the report he came to his conclusion, whether it was prior to, during, or after the defendant's trial March 19–26, and neither prosecutor could recall when he had

first learned that the gun was implicated in the later homicide.

The court concluded that there was no evidence of actual knowledge on the part of the prosecution, but went on to consider whether, even attributing the examiner's own knowledge to the prosecution and assuming its acquisition to have preceded the defendant's trial, there would be any ground for reversal in this case. It concluded that there would not, because the matter was not material to the question of guilt or innocence.

The appropriate test of materiality under these circumstances has been set out by the United States Supreme Court in *United States* v. *Agurs,* 427 U.S. 97, 112–13 (1976):

> The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt. Such a finding is permissible only if supported by evidence establishing guilt beyond a reasonable doubt. It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial.

For some of the same reasons we have discussed in regard to the defendant's first allegation, we must agree with the trial court that the matter was not material. Even if true, the defendant's claim of knowing suppression of ballistics information fails to raise a reasonable doubt as to his guilt. He was never charged with killing Lestage with the revolver, nor was its later use in the Fitzgerald killing inconsistent with its use by his co-defendant in the first. The evidence introduced by the State against him was overwhelming and uncontradicted, and included both eyewitness testimony and circumstantial corroboration by forty-seven other witnesses.

■ On these facts the defendant's petition for post-conviction relief must be denied, as was ruled below.

*Judgment affirmed.*