**William W. WEALE, III v. David R. LUND, Isabel R. Lund and Nikao Concepts, Inc.**

[649 A.2d 247]

No. 93-384

September 6, 1994.

On June 19, 1988, Nikao applied for credit with Connval, Inc., a hardware and building supplies business then owned by plaintiff William Weale. The document, entitled "Confidential Credit Application and Credit Agreement," was signed by the Lunds under the following language:

> The undersigned hereby agree to pay all bills according to the terms of the sale. We further agree to pay interest charges, to the extent allowed by law, for past due accounts, and to pay if applicable, all costs of collection, including, but not limited to, attorney's fees.

Elsewhere in the agreement, a paragraph provided:

> Please briefly state the intended use for the materials purchased from Connval, Inc. and the approximate amount of the monthly credit you need. I.E. "Building materials for my remodeling business—$2,000." or "Materials for our new addition—$2,000."

In response, the Lunds wrote they were "looking for a line of $2,000." The agreement authorized three named individuals to charge to the account.

From June 1988 to August 1989, Nikao's monthly purchases from Connval on the account ranged from $5,900 to $31,600 and averaged over $11,000. In connection with these transactions, Connval issued signed invoices and monthly statements to Nikao showing the status of the account. These invoices and statements set forth the terms of service charges as follows: "A maximum service charge of 2% per month will be added to all accounts over 30 days. Annual rate of 24%." The invoices also restated the terms of collection costs as set forth in the credit agreement.

Although individuals other than those named on the agreement were charging goods on the account in amounts above $2,000 a month, Nikao never complained to Connval. During this period, Nikao paid Connval on a regular basis for goods purchased and service charges, when applicable. In the summer of 1989, Nikao stopped making payments to Connval, and by February 14, 1990, Nikao owed Connval $37,132.77. This sum included service charges and interest computed according to the terms set forth in the invoices. At that time, the Lunds executed a promissory note in favor of Connval in exchange for a cancellation of the accounts receivable. The note specified the principal sum as $37,132.77 "or as much as may be finally determined to be due and owing under the Credit Application and Credit Agreement referred to herein."

Under the terms of the note, the Lunds agreed to pay interest on the unpaid balance of the note as specified in the agreement. Beginning March 14, 1990, interest payments only were to be made monthly to the holder with a final payment of all principal and unpaid interest due on February 14, 1993, or upon the sale of the property secured by the note. On February 23, Connval transferred and assigned this note to Weale, who notified the Lunds of the transfer. Weale received regular monthly payments from March 1990 to May 1991, after which no further payments were made.

Weale brought suit on the note. The superior court determined the amount due and owing under the terms of the Credit Application and Credit Agreement, which had been incorporated into the note, and awarded Weale the principal sum of $37,132.77; $19,066 in accrued interest at an annual rate of 24%; $779.73 in accrued late charges; and $9,196.14 in collection costs, for a total of $66,174.64. The Lunds appeal this award.

First, the Lunds claim they signed the credit agreement as guarantors, not principals, and are therefore only secondarily liable for the outstanding debt of Nikao. On the basis of this claimed guarantor status, the Lunds also assert that any modifications in the credit agreement with respect to a credit limit or authorized individuals are rendered unenforceable by the Statute of Frauds because they were not in writing. See 12 V.S.A. § 181(2) (a special promise to answer for the debt or default of another must be in writing to be enforceable); *Chomicky v. Buttolph*, 147 Vt. 128, 130, 513 A.2d 1174, 1175 (1986) (modifications made in a contract controlled by the Statute of Frauds are subjected to the same requirements of form as the original provisions). We will not disturb the trial court's finding that the Lunds were principals if it is supported by the evidence and not clearly erroneous. *Lewis v. Cohen*, 157 Vt. 564, 568, 603 A.2d 352, 353 (1991) (findings of fact will not be disturbed on appeal unless clearly erroneous or unsupported by the evidence). Because the express terms of the credit application imposed personal liability on the Lunds, it was not error for the court to have concluded that the Lunds were principally liable. Because the Lunds did not sign as guarantors, the Statute of Frauds is not invoked and does not apply to subsequent modifications in the agreement.

Next, the Lunds assert that their handwritten statement in the credit agreement, "we are looking for a line of $2,000," imposed a limitation on their liability. We disagree. This language cannot be construed as a credit ceiling because Nikao consistently purchased goods well in excess of this amount. The course of the parties' conduct indicates the $2,000 was not to be considered by either of them as a limitation. 9A V.S.A. § 2-208(1) (course of performance accepted or acquiesced in without objection shall be relevant to determine the meaning of the agreement).

Third, the Lunds argue that their liability is limited to purchases made solely by those authorized to charge on the account. But Nikao did not challenge the unauthorized signers nor did it ever complain to Connval. In fact, from September 1988 to July 1989 Nikao paid each month, in full, its obligations to Connval without regard to who had made the purchases. Their course of performance here estops them from enforcing a limitation on their liability on this ground. See 9A V.S.A. § 2-208(3) (course of performance shall be relevant to show a waiver or modification of any term *inconsistent with such* course of performance).

Fourth, the Lunds argue the trial court applied the wrong rate of interest. The court applied 24% annual interest (2% per month) as provided in the invoices for overdue accounts. No claim is made that the amount of interest was usurious. The credit agreement did not specify the applicable interest rate but did contain the following language: "The undersigned hereby agree to pay all bills *according to the terms of the sale*." (Emphasis added.) From this language, the court incorporated, by reference, the interest rate of 2% per month as set forth in the invoices. Since these invoices were signed by Nikao employees when they charged on the account, the law of agency binds the Lunds to those terms. The invoices provided that the employee's signature indicated agreement as to the 2% per month interest on overdue account balances. Reference to the invoices does not, as the Lunds contend, violate the parole evidence rule. 9A V.S.A. § 2-202 (the final expression of the agreement "may be explained or supplemented (a) by course of dealing or usage of trade or by course of performance; and (b) by evidence of consistent additional terms . . . ."). There was no error.

Finally, the Lunds maintain that the trial court's award of $9,196 in attorney's fees was excessive. According to the

Lunds, the fees should have been a proportional amount of the $2,000 they claim was at stake. That position, however, is not compatible with today's decision. In any event, attorney's fees allowed by the trial court will not be disturbed unless there is "'strong evidence of excessiveness or inadequacy.'" *Parker, Lamb & Ankuda, P.C. v. Krupinsky*, 146 Vt. 304, 307, 503 A.2d 531, 533 (1985) (quoting *Young v. Northern Terminals, Inc.*, 132 Vt. 125, 130, 315 A.2d 469, 472 (1974)). The trial court, viewing the number of exhibits, the pretrial and post-trial documents requested by the court, the length of the hearing and the number of legal arguments raised by defendants, found the attorney's fees to be reasonable. Defendants have not demonstrated, nor do we see any indication, that the award was excessive. Accordingly, we will not disturb it.

*Affirmed.*