2006 VT 66

**William WEALE v. David LUND, Isabel Lund, Security Pacific Financial Corporation, Arthur Whitcomb, Inc., Victory in Jesus Ministries and Occupants**

[904 A.2d 1191]

No. 05-365

¶ 1. July 7, 2006. Defendants, David and Isabel Lund,[1] appeal from the superior court's grant of summary judgment in favor of plaintiff, William Weale, to foreclose plaintiff's judgment lien against defendants' property. Defendants claim the debt on which plaintiff seeks to recover through foreclosure is not a preexisting cause of action, and is thus subject to defendants' homestead exemption under 27 V.S.A. § 107, because the debt was not in default at the time defendants acquired their homestead. As such, defendants argue that their homestead property is exempt from foreclosure under 27 V.S.A. § 101. The superior court rejected defendants' construction of § 107. We agree and affirm.

¶ 2. The pertinent facts are undisputed. On February 14, 1990, defendants executed a promissory note in favor of plaintiff's assignor. Defendants made regular monthly payments to plaintiff from March 1990 to May 1991, after which no further payments were made. Defendants purchased the property in question, located in Newbury, Vermont, as their home on May 8, 1991, and recorded the deed on May 22, 1991. Plaintiff brought suit in late 1991 and obtained a writ of attachment, which was recorded on December 9, 1991. He obtained judgment in 1993, and it was affirmed by this Court on September 6, 1994. *Weale v. Lund,* 162 Vt. 622, 649 A.2d 247 (1994) (mem.). Thereafter, plaintiff recorded the judgment in the Newbury land records, creating a judgment lien on defendants' residence. See 12 V.S.A. § 2901. The judgment was never satisfied, and plaintiff brought the action below to foreclose the judgment lien on defendants' prop-

---

[1] Also named as defendants, but not involved in this appeal, were persons and entities holding an interest in the land of defendants.

erty pursuant to 12 V.S.A. § 2903(c). See V.R.C.P. 80.1. Defendants responded that their Newbury property consisted of "a dwelling house, outbuildings and the land used in connection therewith, not exceeding $75,000.00 in value, and owned and used or kept by [them] as a homestead" and, therefore, was not subject to the judgment lien under 27 V.S.A. § 101 (homestead exemption). The lower court granted summary judgment in plaintiff's favor, holding that the debt underlying the judgment lien preexisted defendants' acquisition of their homestead, and, under 27 V.S.A. § 107, the homestead exemption does not apply. Defendants appeal.

¶ 3. This Court reviews a summary judgment decision de novo, employing the same standard as the trial court. *Anderson v. Cooperative Ins. Cos.*, 2006 VT 1, ¶ 6, 179 Vt. 288, 895 A.2d 155. To obtain summary judgment, the moving party must prove that no genuine issues of material fact exist, and that it is entitled to judgment as a matter of law. *Id.*; V.R.C.P. 56(c)(3).

¶ 4. Since 1849, the Vermont Legislature has provided an exemption from attachment and execution for family homesteads against certain debts. 27 V.S.A. § 101. Section 101 provides that "[t]he homestead of a natural person ... not exceeding $75,000.00 in value, and owned and used or kept by such person as a homestead ... shall be exempt from attachment and execution except as hereinafter provided." *Id.* Homesteads, however, remain liable to attachment and levy of execution for certain debts under 27 V.S.A. § 107. Section 107 provides that homesteads "shall be subject to attachment and levy of execution upon *causes of action* existing at the time of acquiring the homestead." (Emphasis added.) A homestead is acquired for purposes of § 107 when the deed for the homestead is properly recorded. *Id.*

¶ 5. The question at issue in this case is the meaning of the phrase "causes of action existing" as used in § 107. Plaintiff posits that this phrase includes debts existing when the homestead was acquired, as set forth in the section's title, "Liability of homestead for debts." Defendants respond that the wording limits debts to those on which the creditor can bring suit — that is, debts that have gone into default. We find that plaintiff's interpretation of the statute is correct.

¶ 6. When construing a statute, our primary objective is to effectuate the intent of the Legislature. *In re S. Burlington-Shelburne Highway Project*, 174 Vt. 604, 605, 817 A.2d 49, 51 (2002) (mem.). Our first step is to look to the language of the statute itself; we presume the Legislature intended the plain, ordinary meaning of that statute. *Burlington Elec. Dep't v. Vt. Dep't of Taxes*, 154 Vt. 332, 335, 576 A.2d 450, 452 (1990). In general, we will not read something into a statute that is not there unless it is necessary to make the statute effective. *Elkins v. Microsoft Corp.*, 174 Vt. 328, 331, 817 A.2d 9, 13 (2002). In the absence of a plain meaning, we must look to the statutory section as a whole, "looking to the reason and spirit of the law and its consequences and effects to reach a fair and rational result." *In re Margaret Susan P.*, 169 Vt. 252, 262, 733 A.2d 38, 46 (1999); see also *Davis v. Hunt*, 167 Vt. 263, 267, 704 A.2d 1166, 1169 (1997) (Court attempts to harmonize constituent parts when interpreting statute).

¶ 7. What are now sections 101 and 107 were enacted together in 1849 under the general title: "An Act to Protect the Homestead." 1849, No. 20. Section 107 has not been amended, except as part of the 1947 comprehensive revision. In that revision, it was separated from § 101 and was separately titled "Liability for debts." See 1947 V.S. § 2616. The phras-

ing at issue has remained the same from 1849 to present.[2]

¶ 8. Furthermore, in 1947, the Legislature added a title to the statute that would later become § 107, indicating that it applies to "debts." We consider the title in construing a statute. See *In re Vt. Nat'l Bank*, 157 Vt. 306, 312, 597 A.2d 317, 320 (1991) (ordinance); *State v. Lynch*, 137 Vt. 607, 613, 409 A.2d 1001, 1005 (1979) (statute). In this case, the title was added to § 107 as part of a comprehensive recodification of the Vermont statutes. We have often noted that we presume that such a recodification is not intended to change the meaning of the statutory law. See *State v. Brennan*, 172 Vt. 277, 282, 775 A.2d 919, 923 (2001); *Town of Cambridge v. Town of Underhill*, 124 Vt. 237, 240, 204 A.2d 155, 157 (1964). In this case, the Legislature reinforced this rule of construction by adding a title that reflected our holdings construing the statute with respect to preexisting debts.

¶ 9. In isolation, we find the term "causes of action existing" to be ambiguous when applied to the circumstances before us. The title of the section, however, "liability of homestead for debts," strongly supports plaintiff's position. More importantly, we have addressed the issue before us in earlier decisions.

¶ 10. We have consistently construed § 107 in accord with plaintiff's position

_____

[2] Section 101 has similarly remained generally unchanged, although a limit to the amount to which the homestead exemption applies was added in 1953 and has been increased throughout the years. See 1860, No. 35 (language generally the same); 1953, No. 127, § 1 ($2,500 limit added); 1967, No. 287 (Adj. Sess.), § 1 ($5,000 limit); 1979, No. 67, § 7 ($30,000 limit); 1995, No. 186 (Adj. Sess.), § 24a ($75,000 limit).

here. We first addressed the liability of homesteads to preexisting debts under § 107 in 1869, in *West River Bank v. Gale*:

> The object of the legislature in this provision evidently was to prevent men, after they had obtained a credit, from putting their property into a homestead, and thus preventing their creditors from reaching it by attachment, and this object is fully accomplished by making it subject to *all debts* that existed prior to the purchase . . . .

42 Vt. 27, 31-32 (1869) (emphasis added). Nowhere in *West River Bank* did we indicate that the statute applied only to debts in default. To so conclude would allow persons to do just what the decision explains the Legislature sought to prevent — a debtor could obtain a loan and promptly put this new property in a homestead so that the debtor would not have to repay the loan and the property would be unreachable. In *Lamb v. Mason*, 45 Vt. 500, 502 (1873), decided four years after *West River Bank*, we noted that "[t]here have been several sessions of the legislature since that decision was made and published, and no change has been made in the statutes that received that construction, and it must be regarded as settled."

¶ 11. Thereafter, we more explicitly addressed the issue at hand in *Gilson v Parkhurst*, 53 Vt. 384 (1881). In that case, this Court affirmed the lower court's finding that a "debt" existed prior to the debtor's filing of the homestead deed, even though the action on the note was not brought until after the deed was recorded. We held "[i]t is *not necessary*, under [§ 107], which subjects the homestead to attachment and levy of execution upon all causes of action existing at the time of acquiring the homestead, *that there should then be a present right of*

*action." Id.* at 388 (emphasis added). Then again in *Robinson v. Leach,* 67 Vt. 128, 129, 31 A. 32, 33 (1895), we squarely rejected the contention that "causes of action" in the statute were limited to a creditor's suit on the debt:

> It is contended that the cause of action meant is, the claim that the plaintiff makes and declares upon as the ground of his suit, and which is to be litigated on trial. But this construction is too strict. The words, "causes of action," are evidently used in a sense broad enough to embrace the debt as distinguished from the evidence of it. The statute is the same for the purposes of this case as though it read, "debts existing," etc. Hence, if the original debt can be said to exist, the case is with the plaintiff.

*Id.*; see also *Titus v. Warren,* 67 Vt. 242, 245, 31 A. 297, 298 (1895) (concluding § 107 "make[s] the right [of the creditor to attach the homestead] to depend upon the existence of the cause of action, *and not upon whether the demand is due*" (emphasis added)).

¶ 12. Defendants' response to this line of cases is that we more narrowly defined "cause of action" in *Grafton Bank v. Doe,* 19 Vt. 463, 467 (1847). *Grafton Bank* is, however, a statute of limitations case and cannot affect our explicit construction of the statute before us.

¶ 13. Largely based on the remedial purpose of the homestead exemption, defendants are asking us to overrule our prior decisions to hold that the homestead exemption does not protect homestead property from collection of preexisting debts only if the debts are in default when the homestead is acquired. To reach the result defendants desire, we would not only have to overrule the decisions, but also ignore the codification that

was intended to include those decisions. As noted above, we refused in *Lamb* to reexamine our initial holding on this issue in *West River Bank* four years after the *West River Bank* decision because we judged the matter "settled" by legislative acquiescence. *Lamb,* 45 Vt. at 502. We conclude that we have now reached the situation described in *In re Estate of Gaskell,* 123 Vt. 57, 59, 181 A.2d 67, 68 (1962):

> But, since the legislature, over the span of so many years, has acquiesced in the view this Court has taken ... that view has become, in effect, part of the statute.... It is to the legislature that policy arguments for change should now be directed. For this Court to unexpectedly depart from the established understanding of the statutory meaning would be unwise and inappropriate.

We recognize that we can depart from this policy where the prior construction of the statute is clearly wrong, *Wilk v. Wilk,* 173 Vt. 343, 347, 795 A.2d 1191, 1194 (2002), but we find that our prior construction of the statute was correct in this instance.

*Affirmed.*