2007 VT 9

**In re Keith Barrows**

[917 A.2d 490]

No. 04-082

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed January 26, 2007

*Matthew Valerio*, Defender General, *Seth Lipschutz*, Prisoners' Rights Office, and *Gregory Sampson*, Law Clerk, Montpelier, for Petitioner-Appellant.

*Robert Simpson*, Chittenden County State's Attorney, and *Pamela Hall Johnson*, Deputy State's Attorney, Burlington, for Respondent-Appellee.

¶ 1. **Burgess, J.** Petitioner Keith Barrows appeals the superior court's order granting summary judgment for the State and dismissing his petition for post-conviction relief (PCR). He argues that: (1) he was unlawfully denied expert services in pursuing PCR; (2) the trial court judge should have recused himself by virtue of the judge's participation in the underlying criminal case; and (3) the trial court did not adequately consider petitioner's allegations before dismissing the case. We affirm.

¶ 2. Petitioner was charged with burglary and sexual assault, in violation of 13 V.S.A. §§ 1201 and 3253, for entering a home in the early morning of January 16, 1995, and subjecting one of the occupants to repeated nonconsensual sexual acts. On January 31, 1995, Judge Katz issued an arrest warrant for petitioner on these charges and a warrant to search petitioner's home. That same day, Judge Katz presided over an inquest proceeding related to the case. The following day, petitioner was arraigned before Judge Katz and ordered held without bail. Judge Katz denied petitioner's subsequent motion to review bail. In October 1997, the case was tried before a jury, Judge Pineles presiding, and petitioner was found guilty on both counts. Petitioner was sentenced to fifty-five years to life. Petitioner appealed his convictions and sentence to this Court, and we affirmed. *State v. Barrows*, No. 98-085 (Vt. Aug.

21, 2000) (unreported mem.). Petitioner now challenges these convictions through the present PCR proceeding.

¶ 3. Prior to the January 1995 offenses, petitioner had been charged with a burglary committed on October 31, 1994, in which a man entered the bedroom of a St. Michael's College student and briefly restrained the student before fleeing. Judge Katz issued a warrant to take a sample of petitioner's DNA in connection with the investigation of that crime in December 1994. The DNA sample was subsequently used to connect petitioner to the January 1995 crimes. At arraignment for the October crime, Judge Katz ordered petitioner released with conditions. Judge Katz later received, but did not act on, a letter from the father of the St. Michael's student asking that the petitioner be held in jail pending trial.

¶ 4. In the present case, petitioner dismissed his assigned counsel and filed a lengthy pro se petition for PCR that recited alleged facts and violations of his due-process rights — ninety-four points in all. The State moved for summary judgment and dismissal, contending that many of the allegations did not present a basis for PCR, and those claims that might were not supported by any evidence. In response, petitioner moved for expert and investigative services to: (1) aid in his claim of ineffective assistance of counsel; (2) review the DNA evidence; (3) perform tests on the rape kit swabs to look for evidence of spermicidal cream; and (4) locate and interview witnesses. Describing the motion as a "scattershot request," the superior court, Judge Katz presiding, denied defendant's motion for services. In a separate order filed the same day, the court granted the State's motion for summary judgment, stating:

> Petitioner lists vast categories of evidence. But shows not one admissible fact which would cast doubt on guilt/conviction. E.g., ¶ 4a — witnesses who saw him with victim in "5 different establishments." Yet not even 1 such place is named. Summ[ary] judgment "smokes out" whether, indeed, there is such evidence. Here, petitioner actually presents nothing.

Petitioner appealed.[1]

---

[1] By stipulation of the parties, the case was remanded to the trial court to more explicitly identify the facts that it determined were not in dispute and reconsider whether there were genuine issues of material fact. The trial court declined to be more explicit or reconsider.

¶ 5. This Court reviews a grant of summary judgment de novo, employing the same standard as the trial court. *Weale v. Lund*, 2006 VT 66, ¶ 3, 180 Vt. 551, 904 A.2d 1191 (mem.). To obtain summary judgment, the moving party must demonstrate that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Id.*; V.R.C.P. 56(c)(3).

¶ 6. Petitioner claims a right to expert and investigative services under the Public Defender Act's (PDA) provision entitling needy defendants or prisoners to "necessary services and facilities of representation," 13 V.S.A. § 5231(2). A needy defendant has a statutory right to these services at state expense, regardless of whether the person is pro se or represented by counsel, so long as the person shows that the services are "necessary to his defense." *State v. Wool*, 162 Vt. 342, 350, 648 A.2d 655, 660 (1994). Showing necessity requires more than a bare assertion of need; it requires that the specific purpose and nature of the expert assistance be demonstrated and a further showing that an adequate case cannot be made absent such assistance. *Id.* In the context of PCR, this means showing how the assistance advances the argument that petitioner's trial was fundamentally flawed. See *In re LaBounty*, 2005 VT 6, ¶ 7, 177 Vt. 635, 869 A.2d 120 (mem.) (explaining that petitioner claiming ineffective assistance of counsel must show that, but for counsel's errors, there is a reasonable probability that result would have been different); *State v. Boskind*, 174 Vt. 184, 191, 807 A.2d 358, 365 (2002) (citing *In re Rebideau*, 141 Vt. 254, 257, 448 A.2d 144, 146 (1982) ("[P]ost-conviction relief is not a vehicle for reexamining a defendant's guilt or innocence, but is rather designed to correct fundamental trial errors . . . .")). In *Wool*, the Court held·that the defendant did not make a sufficiently specific showing of need for an expert rebuttal witness when the defendant did not specify which parts of the State's expert witness testimony he was seeking to refute. 162 Vt. at 349-50, 648 A.2d at 660. Petitioner distinguishes *Wool*, contending that his request for expert assistance in four areas — legal expertise, DNA analysis, chemical analysis, and witness investigation — was sufficiently specific to demonstrate necessity under the statute.

¶ 7. The State responds first by arguing that the PDA does not provide for expert and investigative services to pro se petitioners in PCR proceedings. The State asserts, correctly, that there is no constitutional requirement to provide PCR petitioners with either counsel or services and that the right to such services is entirely

statutory. *In re Gould*, 2004 VT 46, ¶ 13, 177 Vt. 7, 852 A.2d 632. The State also notes that a 2004 amendment to the PDA limited the availability of counsel in PCR cases to only those that the assigned attorney considers to be nonfrivolous. 2003, No. 157 (Adj. Sess.), § 10 (amending 13 V.S.A. § 5233(a)(3)). The amended section, however, concerns only representation; it does not speak to provision of expert or investigative services. *Wool* makes clear that under the PDA the assignment of counsel and provision of other litigation support services are treated separately, so that waiver or denial of one does not preclude entitlement to the other. 162 Vt. at 348, 648 A.2d at 659-60. None of the State's arguments directly address the plain language of § 5231 that a person "being detained under a conviction of a serious crime, is entitled . . . [t]o be provided with the necessary services and facilities of representation." We thus look to see whether petitioner demonstrated necessity.

¶ 8. Petitioner's motion expressed the need for a legal expert to aid in his claims of ineffective assistance of counsel. These claims range from general incompetence of all lawyers who worked on the case, to petitioner's trial attorney having one or more conflicts of interest, to a physical altercation between petitioner and his trial attorney, to a conspiracy between the State, defense attorney, and trial judge to have petitioner convicted, among others. Yet petitioner's motion did not connect the request for a legal expert to any of the allegations other than a general statement that such expert was needed to address the question of incompetence. Petitioner maintains that under *In re Grega*, 2003 VT 77, 175 Vt. 631, 833 A.2d 872 (mem.), an expert is necessary to make any meritorious ineffective assistance of counsel claim and that denial of his request for a legal expert placed him in an "untenable catch-22 situation" of not being able to make a claim without a legal expert and not being able to get a legal expert without a meritorious claim.

¶ 9. Petitioner is incorrect. It may be that "[o]nly in rare situations will ineffective assistance of counsel be presumed without expert testimony." *Grega*, 2003 VT 77, ¶ 16 (affirming denial of PCR when petitioner failed to provide expert testimony on several ineffective assistance of counsel claims). Nevertheless, setting aside the question of whether some or all of petitioner's claims fall into the rare category of those where an expert is not necessary, petitioner's reading of *Grega* would require that a motion for expert legal assistance be granted pro forma whenever there is a claim of ineffective assistance of counsel, obviating any demonstration of necessity in such instances. Petitioner's

argument fails to distinguish between the burden of proof to win a claim on the merits — to which the comment in *Grega* applies — and the burden to demonstrate necessity for expert services that petitioner faced in this case. To demonstrate necessity for services, petitioner did not have the burden of proving his ineffective assistance claim, for which expert testimony is often required. Rather, petitioner needed to describe how a legal expert would assist petitioner to prove that specific shortcomings in his representation at trial fell below the level of competence for the particular task at issue. See *Wool*, 162 Vt. at 350, 648 A.2d at 660 (describing necessity test). Petitioner failed to make any particularized showing, and his request for a legal expert was properly denied. That petitioner's task in satisfying the necessity test may have been made more difficult by his election to represent himself in his PCR case and forgo the benefit of counsel does not lessen his burden to claim a particular deficiency, its adverse effect on his trial, and the need for an expert to prove it. See *id.* at 350, 648 A.2d at 660-61 (applying standard necessity test to pro se defendant).

¶ 10. In other words, the expert assistance requested by petitioner did not comport to the allegations made. No expert was necessary to prove the circumstances of the conflicts of interest described by petitioner, particularly when they were of such an obvious nature as conspiracy with the State and a physical altercation between himself and his counsel. See *Grega*, 2003 VT 77, ¶ 16 (explaining that expert testimony is not necessary for all ineffective assistance of counsel claims). Petitioner never connected his alleged conspiracies and conflicts to any deficient performance by his attorney in the course of representation — conduct that would be appropriate for expert evaluation. *Id.* ¶¶ 14, 16.

¶ 11. We reach the same conclusion with respect to petitioner's requests for DNA, chemical, and investigative services. Petitioner was somewhat more specific with these requests by identifying the factual claims for which these services would be of assistance. Petitioner still failed, however, to show necessity. Petitioner sought an expert to retest the DNA evidence collected by police and to review the procedures and testing done by the State. But such evidence would pertain to the identity of the victim's assailant, an issue irrelevant to petitioner's claims of consent as set forth in his petition. Further, petitioner provided no basis for believing there to be error in the State's tests or that a new test would adduce additional information. See *Wool*, 162 Vt.

at 350, 648 A.2d at 660-61 (citing *Hough v. State*, 560 N.E.2d 511, 517 (Ind. 1990) (affirming denial of defendant's request for ballistics expert where defendant made no showing to suggest error in State's tests)).

¶ 12. Petitioner's request for chemical analysis to test for the presence of spermicidal cream in the victim was similarly unsupported. Petitioner alleged that the presence of such a substance — suggested by police recovery of an open spermicidal cream container at the crime scene and the victim's admission that she used spermicidal cream as a method of birth control — would be relevant to show consent. Petitioner's claim is speculative at best. Even if the mere presence or use of birth control were relevant to consent, petitioner and his counsel made a reasonable decision not to advance a consent defense at trial in light of countervailing evidence of force. The showing of necessity for chemical analysis thus falls short of demonstrating that the requested assistance would advance a claim of fundamental flaw and was, accordingly, properly denied.

¶ 13. Petitioner also failed to explain how an investigator's locating and questioning witnesses would advance a claim of fundamental flaw in the trial's outcome. Petitioner's request to locate and interview friends, family and other witnesses who knew of his whereabouts on the night of the crime did not include sufficient specific factual allegations as to why an investigator was necessary. Petitioner can, apparently, identify the claimed witnesses, anticipate what they would testify to, and obtain affidavits from them to that effect; the purpose of an investigator is unclear. Petitioner's request is no more than a bare assertion of need. See *Bailey v. Commonwealth*, 529 S.E.2d 570, 578 (Va. 2000) ("Mere hope or suspicion that favorable evidence is available is not enough to require that [investigative] help be provided." (internal quotations omitted)).

¶ 14. Petitioner argues that Judge Katz should have recused himself from deciding petitioner's PCR case because of the judge's participation in the underlying criminal case. Petitioner failed to raise this issue in the lower court, either before or after the judge issued his summary judgment decision, and we need not consider it on appeal. *In re B.L.*, 145 Vt. 586, 590, 494 A.2d 145, 147 (1985). Setting aside the procedural deficiency, we disagree with petitioner's contention in any event. By statute, judges who preside over a criminal trial and sentencing are precluded from hearing an application for PCR in the same case. 13 V.S.A. § 7131. Though Judge Katz did not preside over petitioner's trial or sentencing, petitioner nevertheless argues that the judge's other involvement in the case, including the issuance of search

warrants, initial arraignment, and receipt of a letter criticizing his order to release petitioner on conditions in the 1994 case, is analogous to presiding over trial or sentencing. However, a PCR petition asks the court to find fundamental flaws in the criminal trial. Disqualification of the trial judge from evaluating the same trial for fairness "ensures that an applicant receives a fair opportunity to be heard, and avoids even the appearance of bias." *In re Wilkinson*, 165 Vt. 183, 186, 678 A.2d 1257, 1259 (1996). This same concern is not present for a judge who sets bail or issues a search warrant when, as here, those decisions are not raised in the PCR and no basis is shown to expect that the pretrial judge will have any conflict in conducting a fair review of the trial.[2]

¶ 15. Nor are we persuaded that Judge Katz's recusal was required by the Vermont Code of Judicial Conduct's provision concerning "personal bias or prejudice concerning a party . . . or personal knowledge of disputed evidentiary facts concerning the proceeding." A.O. 10, Canon 3(E)(1)(a). Contrary to petitioner's assertions, any knowledge acquired by Judge Katz in the course of his participation in petitioner's case was not "personal" as contemplated by Canon 3, but was information acquired by judicial proceedings which judges are routinely expected to set aside in presiding over subsequent cases of an accused. See *In re Daniel E.*, 701 N.E.2d 408, 409 (Ohio Ct. App. 1997) ("What a judge learns in his judicial capacity, whether from pretrial proceedings, co-defendant pleas, or evidence presented in a prior case, is properly considered as judicial observations and creates no personal bias requiring recusal [under Canon 3 of the Judicial Code of Conduct]."). We do not read Canon 3 to disqualify a judge for having any prior knowledge of a defendant or petitioner. Indeed, if such were the standard for disqualification, few trial judges in this state would be able to preside over cases involving some of our district court's more frequent defendants.

¶ 16. Finally, petitioner argues that the trial court failed to fully evaluate the merits of his case before granting summary judgment. Petitioner contends that the superior court failed in its "duty to make all findings necessary to support its conclusions, resolve the issues

---

[2] Petitioner did claim in his PCR petition that "all warrants involved in his case were defective," but attributes the defect to "police misconduct and/or poor police work" rather than judicial error. Petition ¶ 28. We find no basis for bias in Judge Katz's review of this allegation.

before it, and provide an adequate basis for appellate review," *Secretary, Vermont Agency of Natural Resources v. Irish,* 169 Vt. 407, 419, 738 A.2d 571, 580 (1999), and that for PCR cases in particular, findings of fact are required. *In re Kraatz,* 137 Vt. 533, 534, 409 A.2d 576, 576-77 (1979). The statement in *Irish* about the duty to make findings was made in the context of a trial court having held an evidentiary hearing to determine civil penalties for environmental violations but failing to make a finding as to an element that would have enhanced the penalties. 169 Vt. at 410, 419, 738 A.2d at 575, 580. Similarly, in *Kraatz* the trial court had held an evidentiary hearing for a PCR case after which the court had an obligation to make findings of fact. See 13 V.S.A. § 7133 (providing that unless the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall hold an evidentiary hearing and make findings of fact and conclusions of law).

¶ 17. The applicable standard is different for ruling on summary judgment. There, the trial court is called upon to determine whether there are any genuine issues of material fact and, if not, to render judgment as a matter of law. V.R.C.P. 56(c)(3). When summary judgment disposes of the case, we urge, but do not require, that the trial court list the facts that it has determined to be undisputed. *Crosby v. Great Atl. & Pac. Tea Co.,* 143 Vt. 537, 539, 468 A.2d 567, 568-69 (1983) (affirming grant of summary judgment despite the lack of a statement by trial court identifying the undisputed facts, but urging trial courts to include such statements to facilitate appellate review); cf. V.R.C.P. 56(d) (providing that when a case is *not* fully adjudicated on a motion for summary judgment, the court shall specify the facts that are uncontroverted). These general rules of summary judgment are applicable to PCR cases. 13 V.S.A. § 7133 (providing that judgment may be made based on the record and without a hearing if the record shows that the petitioner is not entitled to relief); see, e.g., *In re Torres,* 2004 VT 66, ¶ 15, 177 Vt. 507, 861 A.2d 1055 (mem.) (reversing summary judgment in PCR case on grounds that there remained disputed facts concerning ineffective assistance of counsel claim); *In re Thompson,* 166 Vt. 471, 479, 697 A.2d 1111, 1116 (1997) (affirming summary judgment in PCR case).

¶ 18. We have reviewed the filings related to the State's motion for summary judgment. The State, through its motion and accompanying statement of undisputed facts, addressed petitioner's claims. The State responded to petitioner's varied claims of ineffective assistance of counsel by showing that some of petitioner's claims had previously been

rejected on the merits and others were not raised at trial or on appeal. For example, with respect to petitioner's claim that his counsel was ineffective for failing to present a consent defense, the district court had concluded that such a defense was not viable and that the petitioner had been aware that the defense was not going to be presented. Petitioner also claimed that his trial attorney had a conflict of interest because the attorney felt physically threatened by petitioner during the trial. According to petitioner, the attorney later made a counterclaim for assault against him in a civil suit. Taking the allegations as true, petitioner nevertheless failed to meet the applicable burden when no objection was raised at trial: to describe how the actual conflict of interest adversely affected his attorney's performance. *State v. Bacon*, 163 Vt. 279, 302, 658 A.2d 54, 69 (1995) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980)). As explained above, his claims of ineffectiveness are unsupported.

¶ 19. Petitioner's claim that tests for the presence of spermicidal cream in the victim would support a defense of consent goes to both his claim of ineffective assistance of counsel and his claim of innocence. As mentioned *supra*, ¶ 18, petitioner's attorney's decision not to pursue a consent defense was not a fundamental flaw when, as the trial court stated, such a defense was not viable and might even upset the jury, and petitioner was aware before trial that the defense would not be presented. To the extent petitioner's spermicidal cream argument is a claim of innocence, a PCR proceeding "is not a vehicle for reexamining a defendant's guilt or innocence, but is rather designed to correct fundamental trial errors." *Rebideau*, 141 Vt. at 257, 448 A.2d at 146. Further, even were we to consider the merits of petitioner's innocence claim, this evidence is so unconvincing, absent any other corroboration and in light of the countervailing evidence of force, that we would not expect the verdict to change. See *People v. Burrows*, 665 N.E.2d 1319, 1324 (Ill. 1996) ("evidence offered by the defendant [in a PCR proceeding] must be of such convincing character that it would likely change the outcome of the trial").

¶ 20. The remaining claims were also unsupported. Petitioner's claim of bias by the presiding trial judge was factually supported only by reference to adverse rulings by Judge Pineles and alleging that the judge spoke of petitioner "with a clearly biased tongue," without being more specific. Petitioner's allegations are insufficient to maintain a claim of bias which requires showing, beyond adverse rulings, that the judge had improper motivations. *State v. Maunsell*, 170 Vt. 543, 546-47,

743 A.2d 580, 585 (1999) (mem.). Similarly, petitioner's claims of police misconduct and tomfoolery are equally unsupported by specific factual allegations. Further, petitioner does not connect these claims to any statutory or constitutional violations that would entitle him to relief, other than his claim of an illegal investigative stop which was raised before trial in a motion to suppress and not brought forth as an issue on appeal. See *State v. Barrows*, No. 98-085 (Vt. Aug. 21, 2000) (unreported mem.). For issues that petitioner could have raised on direct appeal but failed to, he must demonstrate that he did not deliberately bypass the issues. *In re Hart*, 167 Vt. 630, 630, 715 A.2d 640, 641 (1998) (mem.). This burden was equally unmet.

¶ 21. In opposing summary judgment, petitioner included a statement of disputed facts — listing 279 alleged material facts — but the asserted facts were largely irrelevant or conclusory and did not respond to the State's assertions. In his argument on appeal, petitioner has not identified a single genuine issue of material fact, nor have we been able to find one. In the absence of any known issue that would preclude judgment as a matter of law, the State's motion for summary judgment was properly granted.

*Affirmed.*